**AMERICAN EXPORT & ISBRANDTSEN LINES et al., Petitioners,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents.**

**No. 18816.**

United States Court of Appeals Ninth Circuit.

June 26, 1964.

Leonard G. James, Robert L. Harmon, F. Conger Fawcett, Graham, James & Rolph, San Francisco, Cal., for petitioner.

William H. Orrick, Asst. Atty. Gen., Irwin A. Seibel, Michael I. Miller, Department of Justice, Washington, D. C., James L. Pimper, General Counsel, Robert E. Mitchell, Deputy General Counsel, John E. Cograve, Robert B. Hood, Jr., Federal Maritime Commission, Washington, D. C., for respondents.

Clarence Morse, San Francisco, Cal., for intervener Sacramento-Yolo Port Dist.

J. Richard Townsend, San Francisco, Cal., for intervener Stockton Port Dist.

Before CHAMBERS, POPE and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge:

Petitioners seek a review of the following order issued by the Federal Maritime Commission on July 17, 1963, in its Docket No. 1102:

"This proceeding having been initiated by the Federal Maritime Commission pursuant to Rule 5(g) of its Rules of Practice and Procedure, and the Commission having fully considered the matter and having this day made and entered of record a Report containing its findings and conclusions, which Report is hereby referred to and made a part hereof:

"IT IS ORDERED, That the motion to dismiss the proceeding filed by Pacific Coast European Conference and its member lines (respondents) be and it hereby is denied; that respondents cease and desist from putting into effect or carrying out Rule 29 of their Freight Tariff No. 13; and that respondents forthwith strike Rule 29 from their Freight Tariff No. 13."

Petitioners sought from this court an interlocutory injunction restraining enforcement of the Commission's order pending final decision on the merits of the petition. This court denied the motion and petitioners suspended their Rule 29 pending outcome of this review.

The petitioners are common carriers by water and provide regular shipping service from Pacific Coast ports of the United States to ports in Europe. They are members of a steamship conference— The Pacific Coast European Conference —formed by Conference Agreement [presently designated F.M.C. No. 5200] approved May 26, 1937 under Section 15 of the Shipping Act, 1916, (46 U.S.C. § 814) by a predecessor of the Commission, and thereafter amended in parts not here material.

Petitioners published from time to time a tariff setting forth all agreed rates, rules and regulations which are decided upon by a three-fourths vote of the membership of the Conference, and filed the same with the Commission under Section 15 of the Shipping Act. Its current tariff filed the Commission is Pacific Coast European Conference Freight Tariff No. 13.

On February 20, 1963 petitioners filed with the Commission an amendment to the general rules section of their Freight Tariff 13, adding a new rule, Rule 29, reading as follows:

"29. *PORT EQUALIZATION.* Carriers may equalize a shipper's cost of delivering cargo to carriers' designated loading berths in accordance with the conditions herein set forth:

"(a) Equalization is the absorption by a carrier of the difference between a shipper's cost of delivery to ship's tackle at the loading port nearest to the shipment's point of origin and the cost of delivery to ship's tackle at the loading port designated by the equalizing carrier.

"(b) Equalization shall be restricted to transportation costs on shipments from points of origin in California to loading berths in either Stockton, Sacramento,

or a San Francisco Bay Area port, viz., Alameda, Oakland, Richmond or San Francisco.

"(c) Equalization shall not be made between San Francisco Bay Area ports, nor between berths within any of the ports named in (b) above.

"(d) The delivery costs shall be based upon the lowest available published rates.

"(e) Equalization payments shall only be made upon shipper's invoices submitted to individual carriers and approved by the Conference office. Invoices must be supported by copies of the covering ocean bills of lading and copies of the transportation bills showing applicable tariff authorities covering movement from shippers' points of origin."

Rule 29 was adopted by the conference in accordance with the voting procedures set forth in Article 8 of the Conference Agreement.

Petitioners contend on this review that the Commission in issuing the order under review erred in holding Rule 29 to be "an unapproved Section 15 amendment," and that the procedures adopted by the Commission leading up to the issuance of the order violated petitioners' right to due process in the following respects:

"A. The Commission failed and refused to furnish Petitioners a copy of the Complaint, as required by Section 5 of the Administrative Procedure Act, Rule 8(c) of the Commission's Rules of Practice (18 F.R. 3721), and the 5th Amendment.

"B. Acting as prosecutor and judge, the Commission authorized its own counsel to appear before the Commission as advocate for a private claimant, Port of Stockton, despite the repeal of statutory authority for the employment of attorneys 'for proper representation of the public interest, in investigations made by it'. (Repeal of Section 3, Merchant Marine Act, 1920, 41 Stat. 989, by Section 903(b), Merchant Marine Act, 1936, 49 Stat. 2016.)

"C. The Commission, without any or adequate notice to Petitioners, admitted as intervenors the real Complainant, Port of Stockton, and the port authorities of Sacramento and Portland, Oregon, in violation of Rule 5(n) of the Commission's Rules of Practice (18 F.R. 3719) and Section 5 of the Administrative Procedure Act.

"D. The Commission failed and refused to hear evidence on the matters of fact asserted in its order of investigation, in violation of Section 5(b) of the Administrative Procedure Act and Rule 10(n) of its own Rules of Practice (18 F.R. 3722).

"E. The Commission based its order upon findings of fact made outside the record, in violation of its own Rules of Practice, Rule 10 (cc) (18 F.R. 3722), and Section 7 (d) of the Administrative Procedure Act.

"F. The Commission failed and refused to notify Petitioners of all matters of fact and law asserted, in violation of Section 5 of the Administrative Procedure Act.

"G. The Commission failed to state in its report the 'legal authority and jurisdiction under which the hearing' was to be held, as required by Section 5 of the Administrative Procedure Act.

"H. The Commission failed to make the preliminary and ultimate statutory findings and conclusions called for by Section 8(b) of the Administrative Procedure Act.

"I. The Commission failed and refused to afford Petitioners an 'initial or recommended decision' and the right to file exceptions thereto, as required by Section 8 of the Administrative Procedure Act.

"J. The Commission failed and refused to afford Petitioners timely notice of its order denying Petitioners' motion to dismiss the proceeding, and a reasonable time to answer the charges, in violation of Section 6(d) of the Administrative Procedure Act."

In order to properly consider petitioners' last mentioned contention, it is necessary to set forth somewhat in detail the procedures adopted by the Commission leading up to the issuance of the order under review.

Prior to the filing of Rule 29 with the Commission, the Port of Stockton, California, an intervenor in the proceedings before the Commission, by letter advised the Commission that the rule would be filed and requested its rejection by the Commission on the ground that the rule constituted a modification of petitioners' basic agreement and as such required approval by the Commission under section 15 of the Shipping Act.

The Commission by letter informed the then Chairman of the Conference as follows:

"We have received information indicating that the Pacific Coast European Conference contemplates filing in its tariff port equalization rules which would permit member lines to absorb a portion of the rail or truck freight charges from interior points in California to San Francisco Bay ports, or, in the reverse direction, in order to equalize shippers' charges via various ports. It is reported that this equalization rule will be filed to become effective March 1, 1963.

"We have received an informal protest stating that since the Pacific Coast European Conference agreement does not contain any provision permitting port equalization, such port equalization rules must be filed with the Commission and approved under Section 15 before becoming effective. The argument is advanced that the promulgation of

port equalization rules goes beyond the scope of the presently approved agreement and, therefore, implamentation of such a rule without Section 15 approval, would be a violation of that Section.

"The informal complaint further requests that if such a filing is made by your conference it be rejected by the Commission.

"The above is a summary of the informal complaint which we have received. We request the views of the conference regarding the substance of this complaint."

The Chairman of the Conference replied to the Commissioner's letter, in relevant part, as follows:

"The Conference has adopted a Port Equalization rule which is shown on 11th Revised Page 'R' of the General Rules Section of Conference Freight Tariff No. 13 as Rule No. 29—Port Equalization. This page was issued 20th February to become effective 1st March 1963 and has been filed with the Commission.

"Since your letter merely contains a summary of the informal complaint and does not name the protestant, it would be appreciated if you would furnish me with a complete copy of the complaint, including the name and address of the protestant. Upon receipt of the informal complaint the matter will be given further attention."

The Commission by letter then advised the Chairman that the substance of the complaint had been accurately stated and advised him that, in the Commission's view, the name of the complainant was unnecessary in responding to the Commission's inquiry, and urged a reconsideration by the Conference of its position and a response to the earlier letter of the Commission.

No reply was received from petitioners.

On April 9, 1963, the Commission, pursuant to Rule 5(g) of its Rules of Prac-

tice and Procedure [46 C.F.R. § 502.68] issued a show cause order directed to the petitioners as follows:

"On February 20, 1963, the member lines of the Pacific Coast European Conference amended their Freight Tariff No. 13 to include a new rule numbered 29, to be effective March 1, 1963.

"Rule 29, entitled 'Port Equalization' provides that the member lines may equalize a shipper's cost of delivering cargo to the lines' designated loading berths in accordance with the conditions set forth therein.

"Paragraph A of Rule 29 states that equalization is the absorption by a carrier of the difference between a shipper's cost of delivery to ship's tackle at the loading port nearest to the shipment's point of origin and the cost of delivery to ship's tackle at the loading port designated by the equalizing carrier.

"Agreement 5200, the approved agreement of the Pacific Coast European Conference, provides in Section 1 thereof:

" 'This agreement covers the establishment, regulation and maintenance of agreed rates and charges for or in connection with the transportation of all cargo in vessels owned, controlled, chartered and/or operated by the parties hereto in the trade covered by this agreement, and brokerage, tariffs and other matters directly relating thereto, members being bound to the maintenance as between themselves of uniform freight rates and practices as agreed upon from time to time.'

"It appears that the above-quoted language of Agreement 5200 may not encompass port equalization within 'the establishment, regulation and maintenance of agreed rates and charges' and that the equalization rule introduces an entirely new scheme of rate combination and discrimination not em-

bodied in the basic agreement, requiring specific approval pursuant to Section 15 of the Shipping Act, 1916.

"Rule 29 has not been submitted to the Commission for approval, nor approved pursuant to Section 15 of the Shipping Act, 1916, and is being effectuated by the member lines.

"Section 15 provides in part that:

" 'Any agreement and any modification or cancellation of any agreement not approved, or disapproved, by the Commission shall be unlawful, and agreements, modifications, and cancellations shall be lawful only when and as long as approved by the Commission; before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification or cancellation; * * *.'

"It therefore appears that the publication and effectuation of Rule 29 by the member lines of the Pacific Coast European Conference may be in violation of the terms of Section 15.

"The issues raised herein do not involve any disputed issues of fact requiring an evidentiary hearing, and require a prompt determination by the Commission.

"THEREFORE, IT IS ORDERED, That the Pacific Coast European Conference and the member lines thereof show cause why the port equalization provision, Rule 29 of Freight Tariff No. 13, should not be declared unlawful and why Rule 29 should not be ordered stricken from said tariff. This proceeding shall be limited to the submission of affidavits and memoranda, replies thereto and oral argument. The affidavits of fact and memoranda of law shall be filed no later than close of business *April 30, 1963*, replies thereto shall be filed no later than close of business *May*

*10, 1963.* An original and 15 copies of such affidavits of fact and memoranda of law, and replies thereto, are required and must be addressed to the Secretary, Federal Maritime Commission, Washington 25, D. C. Copies of any papers filed with the Secretary should also be served upon all parties hereto. Oral argument will be held at 9:30 A.M., May 17, 1963 in Room 114, 1321 H Street, N.W. Washington, D. C.

"IT IS FURTHER ORDERED, That the Pacific Coast European Conference and the member lines thereof as indicated in Appendix A attached hereto are hereby made respondents in this proceeding.

"IT IS FURTHER ORDERED, That notice of this Order and notice of hearing be published in the Federal Register, and a copy of such Order and notice of hearing be served upon respondents.

"All persons (including individuals, corporations, associations, firms, partnerships, and public bodies) having an interest in this proceeding and desiring to intervene therein, should notify the Secretary of the Commission promptly and file petitions for leave to intervene in accordance with Rule 5(n) [46 CFR § 201.74] of the Commission's Rules of Practice and Procedure."

Copies of the order were served on petitioners on April 15, 1963.

On April 23, 1963 the Commission granted the petition of Port of Stockton to intervene in the proceedings.

On April 26, 1963 petitioners filed with the Commission a motion to dismiss the proceedings, in form as follows:

"The order instituting the present proceeding and the procedure therein contemplated are without a lawful, statutory basis and are, in fact, directly contrary to the minimum requirements of a fair hearing as set forth in the Shipping Act and the Administrative Procedure Act.

Consequently, Respondents respectfully move this Commission to dismiss the proceeding and, if it deem such action desirable, to reinstitute its investigation of Respondents' Port Equalization Rule in a proper and lawful manner."

Replies in opposition to petitioners' motion to dismiss were filed by Port of Stockton and Hearing Counsel on May 6, 1963.

On May 8, 1963 petitioners were notified that oral argument on the merits would be held on May 17th as provided in the order to show cause and petitioners were requested to advise the Commission as to the amount of time desired for oral argument. Petitioners' counsel, in reply, requested information as to what disposition had been made of petitioners' motion to dismiss. Petitioners were then notified that arguments on the motion to dismiss would be held on May 17th. Petitioners' counsel replied to the Commission that in view of the short notice it was impossible to participate in the oral argument and stated that "accordingly hereby submit respondents case on written motion." Petitioners' counsel did not appear for oral argument.

On July 17, 1963 the Commission rendered its report on the case and issued the order under review.

In its report accompanying the order the Commission ruled that the procedures adopted by the Commission were in accordance with law; that petitioners' motion to dismiss was without merit and that Rule 29 was not sanctioned by any provision of petitioners' basic Conference Agreement.

■ We are not impressed by the criticisms, multiplicitous as they are, made by the petitioners to the procedures adopted by the Commission in this case. From our review of the record we are satisfied that no substantial right of due process was denied to them and no prejudice was suffered by them.

The proceeding was instituted by the Commission, on its own motion, upon is-

suance of the order to show cause set forth earlier in this opinion. While it may be true that the letter received by the Commission, prior to the filing of Rule 29, from the Port of Stockton triggered the decision of the Commission to institute the show cause procedure, it cannot be said that the proceedings were instituted by a formal complaint filed by the Port of Stockton.

Section 22 of the Shipping Act (1916) [46 U.S.C. § 821] in substance provides that any person may file with the Board a sworn complaint setting forth any violation of the Shipping Act by any of the persons subject to the Act. In such case the Board must furnish a copy of the complaint to such other person who has a reasonable time to satisfy the complaint or answer it in writing. If the complaint is not satisfied, then the Board shall investigate it in such manner and by such means, and make such orders as it deems proper. Moreover, the section provides: "The Board, upon its own motion, may in like manner and, * * *, with the same powers investigate any violation of this chapter."

Rule 5(g) of the Commission's Rules of Practice and Procedure [46 C.F.R. c. iv § 502.67] provides:

"(g) Order to show cause. The board may institute a proceeding against a person subject to its jurisdiction by order to show cause. The order shall be served upon all persons named therein, shall include the information specified in rule 10(c), may require the person named

therein to answer, and shall require such person to appear at a specified time and place and present evidence upon the matters specified."

Petitioners claim that the Commission, in failing to serve petitioners with a copy of the letter received by the Commission from the Port of Stockton, violated Section 5(a) of the Administrative Procedure Act,[1] and Rule 8(c) of the Commission's Rules of Practice and Procedure [46 C.F.R. c. iv § 502.67] which provides that complaints filed pursuant to Rule 5(b) [46 C.F.R. § 502.62] [2] shall be served by the Commission.

■ Since the letter from the Port of Stockton was not a formal complaint and did not purport to be such, compliance with Rule 5(b) and Rule 8(c) governing formal complaints was unnecessary. Petitioners admit that they received a copy of the order to show cause, which meets the requirements of Rule 5(a) of the Administrative Procedure Act.

■ There is likewise no merit in petitioners' claim that they were given insufficient notice of the petitions to intervene filed by Port of Stockton and others, and thus denied their right to reply.

The record discloses that the petitions to intervene were filed prior to the hearing. Intervention is provided for in Rule 5(n) [46 C.F.R. § 502.73] which allows replies to petitions to intervene only if they are filed subsequent to the hearing.[3]

---

1. "5(a) Notice: Persons entitled to notice of an agency hearing shall be timely informed of (1) the time, place, and nature thereof, (2) the legal authority and jurisdiction under which the hearing is to be held, and (3) the matters of fact and law asserted. In instances in which private persons are the moving parties, other parties to the proceedings shall be given prompt notice of the issues controverted in fact or law * * *."

2. Rule 5(b) sets forth the requirements for the filing of formal complaints. Among other things the rule requires that the

complaint must state the name and address of each carrier complained of, a concise statement of each cause of action, and a request for the relief sought, and the complaint must be signed and sworn to.

3. Rule 5(n) in pertinent part provides: "if a petition (in intervention) filed prior to the hearing is granted, copies will be served by the Board as provided by Rule 8(c); when tendered at the hearing, sufficient copies shall be provided for distribution as motion papers to the parties represented at the hearing, together with additional copies for the use of the Board.

■ Petitioners contend that the Commission violated Section 5 of the Administrative Procedure Act by failing to notify them "of all matters of fact and law asserted" and to state in its report the "legal authority and jurisdiction under which the hearing" was to be held. We do not agree. The order to show cause informed petitioners:

(1) that Rule 29 had been filed with the Commission;

(2) that the Rule provided for port equalization which permitted "the absorption by a carrier of the difference between the shipper's cost of delivery to ship's tackle at the loading port nearest to the shipment's point of origin and the cost of delivery to the ship's tackle at the loading port designated by the equalizing carrier.";

(3) of Section 1 of the Conference Agreement;

(4) that the quoted language of Section 1 of the Basic Agreement may not encompass port equalization within "the establishment, regulation and maintenance of agreed rates and charges";

(5) that the equalization rule introduced an entirely new scheme of rate combination and discrimination not embodied in the Basic Agreement, requiring specific approval to Section 15 of the Shipping Act (1916);

(6) that Rule 29 had not been submitted to the Commission for approval, nor approved, pursuant to Section 15 of the Shipping Act, and is being effectuated by the member lines;

(7) of relevant portions of Section 15 of the Shipping Act;

(8) that the publication and effectuation of Rule 29 may be in violation of the terms of Section 15; and, finally,

(9) to appear at the time and place specified and show cause why Rule 29 should not be declared unlawful and ordered stricken from petitioners' tariff.

We are satisfied that the order to show cause was in full compliance with the requirements of Section 5(a) of the Administrative Procedure Act, and that the order clearly advised the petitioners of the issues involved in the proceeding.

■■ Contrary to petitioners' assertion, we believe they were afforded ample notice of the order of the Commission denying their motion to dismiss the proceeding, and a reasonable time to answer the order to show cause. The order to show cause was served on petitioners on April 15, 1963. By the terms of the order, affidavits of fact and memorandum of law were required to be filed not later than April 30, 1963. Replies thereto were to be filed not later than May 10th, and oral argument was fixed for May 17, 1963. Thus petitioners had more than thirty days notice of the time and place fixed for oral argument. Petitioners did nothing except to file, on April 26, 1963, a motion to dismiss the proceedings on the sole ground that the Commission was without statutory authority to adopt the order to show cause procedure. They deliberately and advisedly elected to rest their entire case on their motion to dismiss. In these circumstances they are in no position to complain of the lawful, authorized procedure which the Commission followed. The petitioners were promptly notified of the order denying the motion to dismiss and the reasons therefor, which notice was in compliance with the provisions of Section 6(d) of the Administrative Procedure Act [5 U.S.C. § 1005].

■ Since the proceeding was not bifurcated but was conducted in its entirety before the members of the Commission, we see no merit in petitioners'

When the petition is filed subsequent to the hearing, service shall be made on all parties to the proceedings as provided by

Rule 8(d) and reply may be made thereto in conformity with Rule 5(p) * * *."

complaint that the Commission failed and refused to afford petitioners "an 'initial or recommended decision' and the right to file exceptions thereto, as required by Section 8 of the Administrative Procedure Act." [5 U.S.C. § 1007.]

Petitioners complain of the failure of the Commission to conduct an evidentiary type of hearing, to make required findings of fact and conclusions of law, and that the order under review is based upon findings of fact made outside of the record, allegedly in violation of various provisions of the Administrative Procedure Act and in violation of the Rules of Practice of the Commission. The petitioners did not, in their motion to dismiss—which was the only document filed by them with the Commission—apprise the Commission of any fact stated in the order to show cause which petitioners disputed. Petitioners were notified in the order to show cause of their right to file affidavits and memorandum of law. They did not avail themselves of that opportunity to call to the attention of the Commission any facts which they disputed or which they believed to be relevant and material. Neither did they seek from the Commission any permission to submit evidence or to secure further time in which to submit the same.

There is no issue on the following facts set forth in the order to show cause:

1. That petitioners, on February 20, 1963, amended their Freight Tariff No. 13 to include the new Rule 29 to be effective March 1, 1963;

2. That Rule 29, entitled "Port Equalization" provides that member lines may equalize the shipper's cost of delivering cargo to the lines designated loading berths in accordance with the conditions set forth therein;

3. As to the contents of Rule 29;

4. As to Agreement 5200, the approved Agreement of the petitioners;

5. Rule 29 had not been submitted to the Commission for approval, nor given specific approval, pursuant to Section 15 of the Shipping Act (1916) and that the Rule was to be effectuated by the petitioners; nor

6. As to the relevant provisions of Section 15. In view of the contents of the order to show cause, it appears to us there were no issues of fact to be resolved by the Commission. Rule 29 and the Basic Conference Agreement in light of the contents of the order to show cause presented only questions of law for determination by the Commission. In these circumstances an evidentiary hearing is not required. Petitioners were given the opportunity to present legal memorandum, and the opportunity of oral argument. In the context of this case they were entitled to no more. Producers Livestock Marketing Association v. United States et al., 241 F.2d 192 (10th Cir., 1957); affirmed, Denver Union Stockyard Company v. Producers Livestock Marketing Association,. 356 U.S. 282, 78 S.Ct. 738, 2 L.Ed. 2d 771 (1958). The Court of Appeals stated at page 196 of 241 F.2d:

"Although 9 C.F.R. 202.2(g) defines 'hearing' to be 'that part of the proceeding which involves the submission of evidence', it is fundamental to the law that the submission of evidence is not required to characterize 'a full hearing' where such evidence is immaterial to the issue to be decided. In construing a similar provision of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., the Supreme Court has defined a full hearing as one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice and law of the step asked to be taken. Akron, C. & Y. Ry. Co. v. United States, 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605. Where no genuine or material issue of fact is presented the court or administrative body may pass upon the issues of law after according the parties the right of argument. This was done in the instant case and consti-

tutes a 'full hearing' for consideration of the limited contention made by the petitioner in its complaint and by its election not to submit evidence."

Section 8(b) of the Administrative Procedure Act [5 U.S.C. § 1007] in substance provides that all decisions shall become part of the record and shall include a statement of findings and conclusions as well as the reasons or basis therefor, upon all the material issues of fact or law presented on the record. Petitioners complain of a failure to comply with such requirements. We believe there was sufficient compliance. The report of the Commission which accompanied the order under review states that no factual issue is involved, but solely questions of law on which it made findings and conclusions which fully support the order. The reasons for the conclusions are likewise stated in the report. We see no merit in petitioners' related contention that the order under review is based upon findings of fact made outside the record in violation of the Commission's Rules of Practice, Rule 10(cc) [46 C.F.R. 201.169] and Section 7(e) of the Administrative Procedure Act [5 U.S.C. § 1006].

 Petitioners complain that the Commission was without authority to authorize the appearance in the proceedings of one of its own counsel who, petitioners claim, appeared as an advocate for the intervenor, Port of Stockton. The record does not support such claim. The mere fact that the views expressed by such counsel coincided with the views expressed by the Port of Stockton, and contrary to the views now expressed by the petitioners, does not establish his representation was other than in the public interest. There is noting in the record to suggest that such counsel participated in the decisional function of the Commission. Section 201(e) of the Merchant Marine Act (1936) [46 U.S.C. § 1111] authorizes the Commission, without regard to the Civil Service Laws, to appoint twelve attorneys and, subject to the provisions of the Civil Service Laws, to appoint such other attorneys as are necessary in the execution of its functions. In our view it was within the discretion of the Commission to authorize the appearance of "hearing counsel" in this show cause proceeding.

We now consider petitioners' first contention that the Commission erred in holding Rule 29 to be "an unapproved Section 15 amendment."

The Shipping Act (1916) Section 15 [46 U.S.C. § 814] in pertinent part provides:

"*Contracts between carriers filed with Commission*

"Every common carrier by water, * * *, shall file immediately with the Commission a true copy, * * *, of every agreement with another such carrier * * *, or modification or cancellation thereof, to which it may be a party * * *, fixing or regulating transportation rates or fares; giving or receiving special rates, accommodations, or other special privileges or advantages; controlling, regulating, preventing or destroying competition; * * *; allotting ports or restricting or otherwise regulating the number and character of sailings between ports; limiting or regulating in any way the volume or character of freight or passenger traffic to be carried; or in any manner providing for an exclusive, preferential, or cooperative working arrangement. The term 'agreement' * * * includes understandings, conferences, and other arrangements.

"The Commission shall by order, after notice and hearing, disapprove, cancel or modify any agreement, or any modification or cancellation thereof, whether or not previously approved by it, that it finds to be unjustly discriminatory or unfair as between carriers, shippers, exporters, importers, or ports, * *, or to operate to the detriment of the commerce of the United States, or to be contrary to the public interest,

or to be in violation of this chapter, and shall approve all other agreements, modifications or cancellations. * * *

* * * * * *

"Any agreement and any modification or cancellation of any agreement not approved, or disapproved, by the Commission shall be unlawful, and agreements, modifications, and cancellations shall be lawful only when and as long as approved by the Commission; before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification, or cancellation; except that tariff rates, fares, and charges, and classifications, rules, and regulations explanatory thereof (including changes in special rates and charges covered by section 813a of this title which do not involve a change in the spread between such rates and charges and the rates and charges applicable to noncontract shippers) agreed upon by approved conferences, and changes and amendments thereto, if otherwise in accordance with law, shall be permitted to take effect without prior approval upon compliance with the publication and filing requirements * * *, and with the provisions of any regulations the Commission may adopt. * * *"

The first question presented is whether Rule 29 constitutes an agreement or arrangement between the members of the Conference or a modification of an agreement or arrangement, regulating, preventing, or destroying competition, allotting ports or restricting or otherwise regulating the number and character of sailings between ports; or in any manner providing for an exclusive, preferential or cooperative working arrangement.

Rule 29 was adopted by the Conference in accordance with the voting procedures set forth in Article 8 of the Conference Agreement, purporting to be an amendment of the General Rules section of

their Freight Tariff 13. The failure of any member of the Conference to abide by the terms of the Basic Conference Agreement or of any of the rates, rules or regulations adopted thereunder is a breach of the Conference Agreement.

Rule 29 permits a carrier member of the Conference to equalize a shipper's cost of delivering cargo to such member's designated loading berth in accordance with the five conditions set forth in the Rule. The first condition defines equalization as the absorption of the difference between a shipper's cost of delivery to ship's tackle at the loading port nearest to the shipment's point of origin and the cost of delivery to ship's tackle at the loading port designated by the equalizing carrier. Condition two restricts the equalization to transportation costs on shipments from points of origin in California to loading berths in Stockton, Sacramento or a San Francisco Bay area port. Condition three prohibits equalization between San Francisco Bay area ports and between berths in Stockton and Sacramento. The fourth condition requires that delivery costs of a shipper shall be based upon the lowest available published rates; and condition five provides that equalization payments to shippers shall only be made on shipper's invoices submitted to the individual carriers and approved by the Conference office, and requires that invoices must be supported by specified data.

It appears clear to us that Rule 29 is an agreement or arrangement which requires specific Commission approval under Section 15 unless the practice set forth in the Rule is authorized by the Basic Conference Agreement (No. 5200), approved by the predecessor of the Commission, to which question we now turn.

Section 1 of the approved Conference Agreement provides:

"1. This Agreement covers the establishment, regulation and maintenance of agreed rates and charges for or in connection with the transportation of all cargo in vessels owned, controlled, chartered and/or

operated by the parties hereto in the trade covered by this Agreement, and brokerage, tariffs and other matters directly relating thereto, members being bound to the maintenance as between themselves of uniform freight rates and practices as agreed upon from time to time."

Section 3 of the same agreement, in pertinent part, provides:

"3. All freight and other charges for, or in connection with, such transportation shall be charged and collected by the parties hereto based on actual gross weight or measurement of the cargo or per package according to tariff, and strictly in accordance with the rates, charges, classifications, rules and/or regulations adopted by the parties. There shall be no undue preference or disadvantages, nor unjust nor unreasonable discrmination, or unfair practices against any consignor or consignee by any of the parties hereto.

"Each of the parties hereto agrees that neither it nor its principals nor associated nor affiliated companies of any of them shall give or promise, either directly or indirectly, to any shipper, or consignee or broker, or prospective shipper or consignee or broker, or to any officer, employee, agent or representative of any such shipper or consignee or broker, or prospective shipper, or consignee or broker, * * *, in any manner, any return, commission, compensation, concession, free or reduced storage, free or reduced passenger rates, any bribe, gratuity, gift of substantial value or other payment or remuneration through any device whatsoever, or render to any of the foregoing any service outside or beyond that called for in the contracts of affreightment or tariffs. " * * *."

We find no other provisions contained in the basic approved Conference Agreement which appear pertinent to the subject under inquiry.

It is to be noted that we are not here concerned with the merits of Rule 29. We are here concerned only with the question whether the rule requires Section 15 approval before the practices therein set forth may be initiated. If required to be submitted for approval, the question of whether the rule should be approved, disapproved, or modified must await the decision of the Commission in the exercise of its primary jurisdiction. If approval of the rule is required under Section 15, the failure to secure such approval is a violation of that part of the section which provides:

"Any agreement and any modification or cancellation of any agreement not approved, or disapproved, by the Commission, shall be unlawful, and agreements, modifications and cancellations shall be lawful only when and as long as approved by the Commission; before approval or after disapproval it shall be unlawful to carry out in whole or in part directly or indirectly, any such agreement, modification, or cancellation; * * *."

In United States Navigation Company v. Cunard Steamship Co., 284 U.S. 474, at page 486, 52 S.Ct. 247, at page 251, 76 L.Ed. 408 (1932), it is stated:

"If there be a failure to file an agreement as required by section 15, the Board, as in the case of other violations of the act, is fully authorized by section 22, supra, 46 USCA § 821), to afford relief upon complaint or on its own motion."

The general rule covering the Board's authority under Section 15 is stated at page 56 in Isbrandtsen Co., Inc. v. United States, 93 U.S.App.D.C. 293, 211 F.2d 51 (1954) C.D. 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954):

" 'Agreements' referred to in the Shipping Act are defined to include 'understandings, conferences, and other arrangements.' [22] Clearly, a

scheme of dual rates like that involved here is an 'agreement' in this sense. It can hardly be classified as an interstitial sort of adjustment since it introduces an entirely new scheme of rate combination and discrimination not embodied in the basic agreement. But even if it were not a new agreement, it would certainly be classed as a 'modification' of the existing basic agreement. In either case, § 15 requires that such agreements or modifications 'shall be lawful only *when* and as long as *approved*' by the Board.[23] Until such approval is obtained, the Shipping Act makes it illegal to institute the dual rate system. * * " (Footnotes omitted.)

In Trans-Pacific Freight Conference of Japan v. Federal Maritime Commission, 314 F.2d 928 (9th Cir.1963), this court upheld an order of the Commission directing the Conference and its members to cease and desist from carrying out an approved amendment to the Conference Agreement authorizing a "neutral body" system of self-policing in any manner inconsistent with such amendment. At the time there in question, Section 15 contained the following paragraph:

"All agreements, modifications, or cancellations made after the organization of the Board shall be lawful only when and as long as approved by the Board, and before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification, or cancellation."

The court at page 935 stated:

"The portion of § 15 last above quoted makes it plain that without such approval it shall be unlawful to carry out directly or indirectly, any such agreement, modification or cancellation.[8] In attempting to carry out an arrangement for a Neutral Body which was never approved by the Board, the conference was plainly in violation of § 15. §

22 of the Shipping Act provides that, 'Any person may file with the Federal Maritime Board a sworn complaint setting forth any violation of this chapter by a common carrier by water, or any other person subject to this chapter * * *.' The section provides for investigation by the Board, and that the Board may 'make such order as it deems proper'. The action was clearly within the statutory authority of the Commission." (Footnote omitted.)

We are unable to agree with petitioners that Rule 29 is within the scope of their approved Conference Agreement. Such agreement contains no provision expressly authorizing port equalization nor do we find any implicit authority contained therein. Our examination of the basic Conference Agreement and Rule 29, in light of the provisions contained in Section 15 causes us to agree with the following statement contained in the report of the Commission:

"As is shown on its face, respondents' present rule, Rule 29, institutes a port equalization plan under which they absorb part of a shipper's inland freight expense equal to the difference between the cost he would incur in delivering the shipment at the loading port nearest the shipment's point of origin in the State of California, and the cost he incurs in delivering it to respondents at a more distant port (Stockton, Sacramento and specified San Francisco Bay Area ports). Respondents thus pay a portion of the shipper's expense in order to induce his cargo to their vessels at the indicated ports.

"The adoption of a plan of this kind does not constitute conventional or routine rate-making among carriers. It is a new arrangement for the regulation and control of competition. Moreover, it affects third party interests such as the ports and facilities from which traf-

fic is drawn and it obviously is not 'a pure regulation of intraconference competition'. Port equalization raises questions of possible unfairness, unjust discrimination, and detriment to commerce, all matters included in the standards for adjudging the approvability of agreements under section 15, and may bring into play the requirements of sections 16 and 17 of the Act."

We hold the order of the Commission to be valid and the same is hereby affirmed.