**LAW MOTOR FREIGHT, INC., et al.,**
**Petitioners,**

v.

**CIVIL AERONAUTICS BOARD et al.,**
**Respondents.**

**No. 6731.**

United States Court of Appeals
First Circuit.

Heard June 9, 1966.

Decided July 20, 1966.

Rehearing Denied Aug. 23, 1966.

Bryce Rea, Jr., Washington, D. C., with whom Kenneth B. Williams, Boston, Mass., F. G. Freund, Thomas M. Knebel, Washington, D. C., Williams, Kelly, Shrigley & Ryan, Boston, Mass., and Rea, Cross, Knebel & Kinnaird, Washington, D. C., were on brief, for petitioners.

Warren L. Sharfman, Associate General Counsel, with whom Joseph B. Goldman, General Counsel, O. D. Ozment, Deputy General Counsel, Robert L. Toomey, Attorney, Civil Aeronautics Board, Donald F. Turner, Asst. Atty. Gen., and Howard E. Shapiro, Attorney, Department of Justice, were on brief, for Civil Aeronautics Board, respondent.

George C. Neal, Washington D. C., with whom Pogue & Neal, Washington, D. C., was on brief, for Emery Air Freight Corporation, intervening respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This case comes to us on petition to review an order of the Civil Aeronautics Board (the Board) granting Emery Air Freight Corporation (Emery) authority to file tariffs and, pursuant thereto, perform pickup and delivery services for air freight traffic between Boston, Massachusetts and Nashua, New Hampshire. The petitioner, Law Motor Freight, Inc. (Law), is an Interstate Commerce Commission certificated motor carrier which has hitherto carried air freight for Emery between Boston and Nashua, and, accordingly foresees loss of this business.[1]

Jurisdiction and venue rest on 49 U.S. C. §§ 1486(a) and 1486(b). The Board's order is challenged for lack of a prior hearing, and absence of sufficient subsidiary facts to justify its ultimate finding that Emery's proffered service was truly pickup and delivery and thus "in connection with" air transportation.

Emery is an air freight forwarder. Its business is to assemble goods which are to be shipped by air, organize them into cargoes for carriage by an air carrier, and receive, divide, and distribute them to consignees on arrival. It serves Boston, among other cities, and presently provides pickup and delivery service between Boston and Lowell, Massachusetts, 14 miles distant from Nashua. Such service, though performed over the roads from an airport to a municipality by motor vehicles, can be performed by air carriers or air forwarders, if authorized by the Board as "services in connection with * * * air transportation". Section 403(a), Federal Aviation Act, 49 U.S.C. § 1373(a), and Section 222, Civil Aeronautics Board Economic Regulations, 14 C.F.R. § 222.[2]

---

1. A co-petitioner, the National Motor Freight Traffic Association, is a trade association of motor carriers, of which Law is a member. We shall, for convenience, refer only to Law as the petitioner.

2. A power, substantially if not precisely complementary, is that of the Interstate Commerce Commission to exempt motor carriers from the requirement of a certificate of public convenience and neces-

sity when they render services "incidental to transportation by aircraft". Section 203(b) (7a) of the Interstate Commerce Act, 49 U.S.C. § 303(b) (7a).

Interagency collaboration between I.C.C. and the Board has sought to minimize the potential conflict arising out of the Board's interpretation of "services in connection with * * * air transportation" and I.C.C.'s interpretation of services "incidental to transportation by aircraft". I.C.C.'s regulation, 49 C.F.R.

These regulations are in themselves important facts in this case, fixing the framework for assessing the action of the Board and the rights of the parties. The background and concept of the Board's present policies are set forth in a narrative preamble; specific procedures, in numbered sections. The preamble recites that in the past a 25 mile radius from an airport was followed as a rule of thumb governing authorization of pickup and delivery tariff proposals. This radius, however, had been substantially exceeded in a number of cases. After criticism of the rule of thumb approach, the Board solicited comments from carriers and participated in interagency committee study with the Interstate Commerce Commission. The Board's conclusions were that:

"full development of air cargo transportation depends, in large measure, upon efficient surface transportation; effective customer-oriented pickup and delivery service can best be guaranteed when it is under the control of the direct air carrier or the air freight forwarder; this control can be maintained by the operation of trucks directly by the air carrier and the air freight forwarder or under contract with local cartage agents; and a reasonable amount of freedom for the direct air carriers and air freight forwarders to establish pickup and delivery services and to test their adequacy and economy is vital to prevent a stifling of the potential of air cargo transportation."

The preamble in essence ratified the use of the 25 mile rule of thumb approach for numerous certificated points, which have presented no difficulty for either the Board or I.C.C., as well as the existing tariffs which had authorized pickup and delivery services beyond the 25 mile radius. In indicating the Board's approach to future requests for extension beyond a 25 mile radius, the preamble stated:

"The Board will consider any such requests in the light of whether the proposed service is truly air cargo pickup and delivery with the use of specialized equipment (vans or straight trucks) and geared to meeting airline schedules and oriented to customer air transportation needs, as distinguished from line-haul or over-the-road surface transport. The Board would receive and consider any comments by over-the-road truckers and particularly any evidence as to whether the proposed service is in the nature of surface line haul."

The regulations themselves (§§ 222.1, 222.2, 222.3) provided for the filing of written applications for tariffs, in which would be set forth the desired locations, reasons why the contemplated service is deemed appropriate, and economic data and other facts relied on. Instructions for service of copies on interested parties were followed by the requirement that answers of opponents or supporters of an application "shall set forth in detail the reasons for the position taken and include such economic data and facts as are relied upon."

Passing from the regulations to the events in this case, the relevant facts are set forth in Emery's application, as amended, for authority to provide pickup and delivery service between Boston and Nashua; petitioner's motion to dismiss with accompanying affidavit and exhibits of its Vice President of Traffic; and the Board's order granting Emery's application.

Emery's application, as amended, addressed itself both to the rationale for bringing Nashua within the Boston air freight pickup and delivery zone and to the service it would provide. As to the first issue, Emery set forth the distance

§ 210.40, in effect accepts the pickup and delivery areas designated in Board authorized air carrier tariffs, reserving the right, however, to make its own determination if circumstances warrant. The Board, for its part, states in its regulation that its prior determination of a tariff would not interfere with I.C.C.'s freedom to grant or withhold an exemption, although it anticipates that I.C.C. will give appropriate weight to its findings.

between Boston and Nashua (34 miles), Nashua's "strong cultural, commercial and industrial affinity" to Boston, and the allegation that most of Nashua's commerce moves through "the Boston gateway". As to Emery's proposed service, "same day" delivery from Boston and "same night" shipment from Nashua would be offered through coordination with airlines schedules, straight vans of not over 5,000 pound capacity would be utilized, and charges would be $2.00 per hundred pounds, compared with its $1.55 cwt charge already provided in its service to Lowell.

The motion to dismiss made the following points: (1) that I.C.C. criteria should govern; (2) that therefore the question was whether Nashua lay within the "terminal area" of Boston; and (3) that coordination with airline schedules, utilization of straight vans as opposed to tractor-trailers, and the proposed charges had nothing to do with the inclusion of Nashua within Boston's terminal area. The motion prayed that Emery's application be dismissed or, alternatively, that a hearing be had. The affidavit of Law's Vice President set forth its I.C.C. authority as a common carrier, giving line-haul service between Boston and various points in New Hampshire, the pickup service provided from its Keene and Nashua terminals, and its equipment and efforts to accommodate air freight shippers and receivers. The affidavits alleged that Emery accounts for 75 per cent of the air freight Law handles and that granting Emery's application would seriously jeopardize Law's "same night" service to all areas of New Hampshire and northern Massachusetts.[3]

The Board's order, after reciting the averments of the petition and the motion to dismiss, noted that the proposed service was no more extensive than that which had been authorized in other metropolitan areas, and that the proposed service would be coordinated with airline schedules, that the equipment to be used was that traditionally used for pickup and delivery operations, and that rates would be charged which would be closely related to those for similar services within the presently recognized terminal zone. The Board concluded that the service was truly pickup and delivery and was "in connection with air transportation". Meeting petitioner's various objections, it held that Emery had filed sufficient data, that it was not limited by any view the I.C.C. might have taken in administering its own regulations, and that neither legislation nor the exercise of its discretion indicated the need for an evidentiary hearing.

◼ The first issue to consider is whether or not a hearing was required. Petitioner bases its claimed right to a hearing on the theory that the Board's action was that of licensing Emery to engage in motor transportation in competition with Law. Licensing being an act of adjudication, argues petitioner, a hearing is required, even if the proceeding is labelled rule-making, and even though the governing statute does not require a hearing. This conclusion is further indicated, claims petitioner, by the application of principles of due process since Law's property, its I.C.C. license, would be impaired by the Board's action in granting Emery's application.

We do not accept this line of argument. Analysis, recognized administrative practice, specific statutory guidance, accepted principles of statutory construction, and constitutional interpretation all militate against petitioner's point.

The result of the Board order in this case is to declare Nashua within the Boston pickup and delivery area so that all air carriers and air freight forwarders may henceforth, on approval of tariffs filed, operate surface transportation service to Nashua which will be considered to be "in connection with * * * air transportation". The Board, in effect, has declared new ground rules avail-

3. Law's air freight business in 1964 was 2½% of its total gross income of $1,500,000, or $31,500.

able to the air carrying industry applicable to an additional nine miles of terrain.

In our view, this falls within the ambit of rule-making, even though the occasion was the application of one company for pickup and delivery tariffs, and the Board's order was accordingly addressed to the applicant. The Board's action falls within the express definition of "rule" in 5 U.S.C. § 1001(c): " * * * any agency statement of general or particular applicability and future effect designed to * * * prescribe * * * policy * * * and includes the approval or prescription for the future of rates, * * * services or allowance therefor * * *." The order is of "future effect". It is an agency statement of both general and particular applicability. While addressed to a named applicant, it authorizes pickup and delivery services in a particular area which determination is available to all other air carriers and air freight forwarders.[4] After an abortive start, the full requirements of 5 U.S.C. § 1003 respecting notice and the opportunity to submit written data and argument were complied with.

We recognize that the Board's order also, arguably, meets the definition of "license" in 5 U.S.C. § 1001(e): " * * * any agency permit, * * * approval, * * * or other form of permission."

That the same act may have characteristics of both rule making and licensing is not unusual. See Davis, 1 Administrative Law Treatise § 5.02 at 297–298 (1958). But, for the purpose of determining the applicable procedural requirements consistent with sensible administrative practice, we affix the "rule-making" label to the Board's order in this case.[5]

This is consistent with the practice of the Interstate Commerce Commission in determining the limits of a commercial zone as a basis of granting exemptions for surface carrier terminal areas under section 203(b) (8) of the Interstate Commerce Act. Such an act was held to be rulemaking and exempt from the requirement of a formal hearing by reason of being an "agency statement of general * * * applicability and future effect designed to implement [and] interpret * * * law" under section 2(c) of the Administrative Procedure Act, 5 U.S.C. § 1001(c). St. Louis, Mo.-East St. Louis, Ill., Commercial Zone, 1953, 61 M.C.C. 489.[6]

■ As for specific statutory guidance, even if the Board's act were "adjudication", section 5 of the Administrative Procedure Act makes it clear that the requirement of a hearing depends on whether it is a "case of adjudication required by statute". 5 U.S.C. § 1004.

4. This case would seem to be of the kind which led Congress, late in the legislative consideration, to add the words "or particular". As Professor Davis describes the "clear" purpose, "the words 'or particular' were not intended to change into rule making what before the [Administrative Procedure] Act was regarded as adjudication. Those words mean no more than that what is otherwise rule making does not become adjudication merely because it applies only to particular parties or to a particular situation." Davis, 1 Administrative Law Treatise § 5.02, at 296, (1958).

5. The order in this case may be compared to the more momentous action of the Board in American Airlines, Inc. v. Civil Aeronautics Board, D.C.Cir., March 2, 1966, 359 F.2d 624, where the court *en banc* upheld a regulation restricting "blocked space service" to all-cargo carriers and thereby prohibiting the provision of such service by combination carriers. Despite the fact that only two domestic all-cargo carriers are presently certified and that the existing licenses of the combination carriers would be adversely affected, the rule-making process was held appropriate, and a full adjudicatory hearing not required.

6. Petitioner's only comment on this observation was that the I.C.C. practice is to develop a record through either an oral hearing or verified written statements "which all parties have the right to cross examine and rebut". Leaving aside the question of the susceptibility of a written statement to cross-examination, the equivalent of verified written statements was precisely the method followed here by the Board pursuant to Part 222 of its regulations.

Section 403(a) of the Federal Aviation Act, 49 U.S.C. § 1373(a), does not require a hearing, although other sections do. With such a statutory configuration, the clear indication is that the legislative omission was significant. American Trucking Association, Inc., et al. v. United States et al., 1953, 344 U.S. 298, 319, 320, 73 S.Ct. 307, 97 L.Ed. 337; LaRue v. Udall, 1963, 116 U.S.App.D.C. 396, 324 F.2d 428, 432, cert. denied, 1964, 376 U.S. 907, 84 S.Ct. 660, 11 L.Ed.2d 606; Nebraska Department of Aeronautics et al. v. Civil Aeronautics Board, 8 Cir., 1962, 298 F.2d 286, 292.

The remaining question on the issue of hearing is whether such vital rights to life, liberty, or property were involved as to invoke the constitutional due process mandate for a hearing. We see none. Petitioner's citations of Riss & Co. v. United States et al., 1951, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345; Wong Yang Sung v. McGrath et al., 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; and Hornsby v. Allen et al., 5 Cir., 1964, 326 F.2d 605 are not availing. These were cases where the individual or company was a party requesting a certificate of public convenience and necessity *(Riss)*, seeking a license to operate a liquor store *(Hornsby)*, or resisting deportation *(Wong Yang Sung)*. All, therefore, involved a specific adjudication of basic rights, wholly divorced from any purpose of setting agency policy for the future.[7]

■ Admittedly, petitioner will face increased competition as the result of the Board's decision. But freedom from competition is not constitutionally protected. Tennessee Electric Power Co. et al. v. Tennessee Valley Authority et al., 1939, 306 U.S. 118, 138–142, 59 S.Ct. 366, 83 L.Ed. 543; Alabama Power Co. v. Ickes et al., 1938, 302 U.S. 464, 58

S.Ct. 300, 82 L.Ed. 374; First National Bank of Smithfield, N. C. v. Saxon, 4 Cir., 1965, 352 F.2d 267, 272; Fugazy Travel Bureau, Inc. v. Civil Aeronautics Board, 1965, 121 U.S.App.D.C. 355, 350 F.2d 733, 740.[8]

The second issue in this case is whether, even though no hearing was required, the Board acted in the absence of sufficient facts relevant to the ultimate issue it had to decide.

Petitioner's argument is that the basic question was whether the proposed service between Boston and Nashua was in fact pickup and delivery service. It argued that determination of this question was governed by the I.C.C.'s definition of a "terminal area" as "a single homogeneous community, identifiable as such by factors of commercial and industrial integrity, population and business density, and the existence of some reasonable compact limit to the geographical scope of community affairs and influence. * * *" Central Trunk Lines v. Pan American S. S. Corp., 1960, 82 M.C. C. 395, 404, aff'd. sub nom. Sea-Land Service, Inc. v. United States, D.Del., 1963, 222 F.Supp. 558. With this as the criterion, reasons petitioner, Emery failed to establish any relevant facts.

■ We approach this issue with a healthy respect for the findings of the administrative agency. If its decision shows a reasonable relation to statutory provisions and is based on substantial evidence, even if differing conclusions can be drawn from the evidence, we should, as we do, affirm. Consolo v. Federal Maritime Commission, 1966, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 16 L.Ed. 2d 131.

■ We start out with an observation which has to do with making the admin-

7. See American Trucking Associations, Inc. v. United States, supra, 344 U.S. 298 at 322 n. 20, 73 S.Ct. 307, 320, " * * * the Fifth Amendment is no protection against a congressional scheme of business regulation otherwise valid, merely because it disturbs the profitability or methods of the interstate concerns affected." See also Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 1961, 367 U.S. 886, 894–895, 81 S.Ct. 1743, 6 L.Ed.2d 1230.

8. Special circumstances not here present, may require a hearing in a competitive situation. See L. B. Wilson, Inc. v. Federal Communications Commission, 1948, 83 U.S.App.D.C. 176, 170 F.2d 793.

istrative process work. Part 222 of the Board's regulations, as we have noted, specifically states that statements on opposition to an application for pickup and delivery tariffs shall set forth detailed reasons, economic facts, and data relied upon. We acknowledge that the economic data supplied by Emery were scant and general. But we do not look upon a Part 222 proceeding as an exercise in Elizabethan pleading. If petitioner really had facts which bore upon the ultimate issue, it should have made them available. Cf. American Export & Isbrandtsen Lines v. Federal Maritime Commission, 9 Cir., 1964, 334 F.2d 185, 194.

We start out with an observation While the facts alleged by Emery and found by the Board can easily be criticized as being sparse, we suspect that further accumulation of data would not have greatly assisted the Board. In oral argument we asked what further facts might be adduced. Counsel referred to the census definition of the Boston metropolitan area, the precise distance between Nashua and Boston, the determination of any rural areas between the two cities, the political situation. We do not deem the lack of such information a fatal deficiency in the record, particularly where petitioner had the opportunity and the obligation to submit relevant facts.

The application alleged, and the Board found a sufficient nexus between Boston and Nashua, and the type of service offered which would cater to the regular, prompt, inexpensive, small lot service which is connoted by the term "pickup and delivery".. Although we find the record thin, we cannot quite say that the Board was clearly erroneous in finding sufficient evidence.

The only remaining question is whether the Board, in applying the criteria announced in its regulations, was acting beyond its authority in not considering itself bound by I.C.C.'s criteria of a "terminal area". We conclude that the Board acted properly.

The Board has promulgated its philosophy and its procedures in concert with the Interstate Commerce Commission. The system, devised to avoid interagency conflict while preserving agency sovereignty, is to give the Board the first judgment, which shall be given non-conclusive respect by I.C.C.

The Board's new criteria for determining pickup and delivery zones, are not necessarily identical with I.C.C.'s standard of a "homogeneous community, identifiable as such by factors of commercial and industrial integrity". The Board's new formula is a combination of reasonably close communities where service is rendered in smaller trucks, closely tied in with air schedules, and where rates are geared to the smaller shipments. This is not unreasonable for an agency mandated to develop air transportation. The 25 mile rule of thumb must already be a strain on I.C.C.'s tolerant definition of "a homogeneous community."

What is at rock bottom here is a continuing accommodation between two independent agencies whose larger task is to work toward the resolution of transportation problems in the light of technology and urbanization. Recent opinions reflect both the accommodation principle in the approach of the two agencies and the power of each to determine, for its purposes, what is "in connection with" or "incidental to" air transportation. City of Philadelphia v. Civil Aeronautics Board, 1961, 110 U.SApp.D.C. 104, 289 F.2d 770, 774–775; Wycoff Company, Inc. v. United States, D. Utah, 1965, 240 F.Supp. 304, 309–310; Air Dispatch v. United States, E.D.Pa., 1964, 237 F. Supp. 450, 452–453. In holding that the Board applied proper standards, we are not, of course, implying that I.C.C. is bound to rule that Nashua is within the Boston terminal area for the purpose of granting exemptions under its statute. See City of Philadelphia v. Civil Aeronautics Board, supra, 289 F.2d at 774–775. At the present time, I.C.C. not having been called upon for its own decision, there is not even a conflict between administrative actions.

We take minimum notice of petitioner's allegations that the application was

unsworn, in the light of 18 U.S.C. § 1001. Nor are we impressed with the allegation that the Board attempted to base its order on any findings of inadequacy on the part of petitioner.

A decree will be entered affirming the order of the Board.

## OPINION OF THE COURT

On Petition for Rehearing.

### PER CURIAM.

The petition for rehearing is denied. We think there was substantial evidence. In answer to the point made, this is not a case where the sufficiency of the Board's evidence was required to be tested on a record which, when viewed as a whole, contained substantial conflicting testimony.