**NATIONAL MOTOR FREIGHT TRAFFIC ASSOCIATION, INC.,**
and
**United Motor Freight, Inc., Petitioners,**
v.
**CIVIL AERONAUTICS BOARD,
Respondent,
Emery Air Freight Corporation,
Intervenor.**
**No. 19953.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 26, 1966.

Decided Dec. 6, 1966.

Certiorari Denied May 15, 1967.

See 87 S.Ct. 1687.

Fahy, Circuit Judge, dissented.

————

Mr. Bryce Rea, Jr., Washington, D. C., with whom Messrs. Thomas M. Knebel and F. G. Freund, Washington, D. C., were on the brief, for petitioners.

Mr. Warren L. Sharfman, Associate General Counsel, Civil Aeronautics Board, with whom Asst. Atty. Gen. Donald F. Turner, Messrs. Joseph B. Goldman, General Counsel, O. D. Ozment, Deputy General Counsel, Robert L. Toomey, Attorney, Civil Aeronautics Board, and Howard E. Shapiro, Attorney, Department of Justice, were on the brief, for respondent.

Mr. George C. Neal, Washington, D. C., for intervenor. Mr. Brian C. Elmer, Washington, D. C., also entered an appearance for intervenor.

Before FAHY, Circuit Judge, BASTIAN, Senior Circuit Judge, and TAMM, Circuit Judge.

## JUDGMENT

PER CURIAM.

This case came on to be heard on the record from the Civil Aeronautics Board, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this court that the order of the Civil Aeronautics Board on review herein is affirmed. See

Law Motor Freight v. CAB, Inc., 364 F.2d 139, 1st Cir., July 20, 1966.

FAHY, Circuit Judge (dissenting):

The above order of the court has the effect of approving an order of the Civil Aeronautics Board granting the application of Emery Air Freight Corporation, intervenor, to file a tariff for service in connection with air transportation under the provisions of Section 403(a) of the Federal Aviation Act of 1958,[1] and regulations issued by the Board under the authority of the Act.[2] The grant of the application, which was opposed by petitioners National Motor Freight Traffic Association, Inc., and United Motor Freight, Inc., permits the intervenor to engage in motor transportation of property between Flint and the airports of Detroit by a pickup and delivery service rather than by a line haul service such as is employed by petitioner United between Flint and the Detroit airports.

I agree with the Board that the application of Emery should not be denied on the written data presented to the Board, but I think the alternative relief sought by our petitioners, namely, a hearing before the Board, should have been granted. Although the distance between Flint and Detroit is 45 miles, the distance between Flint and the Detroit airports to be served is 65 or 80 miles, depending on routing. The grant of Emery's application thus permits a service which greatly exceeds in mileage the rule-of-thumb terminal area established by the Board for pickup and delivery service, namely, 25 miles.

The regulations applicable to the situation include Board regulation 222.3(d), which reads:

Order of Approval. Tariffs to which this paragraph relates shall not be filed unless and until the Board by order approves the application finding that the proposed tariff involves service in connection with air transportation.[3]

Thus a finding is required that the proposed tariff involves service in connection with air transportation. In the context of this case this means a pickup and delivery service as distinct from a line haul service.

The reason I think a hearing is required is that the finding to be made requires resolution of the controversy over the nature of the service, and that controversy could not be resolved upon the basis of the only data before the Board. By motion United challenged the claim of Emery that the tariff was for a good faith pickup and delivery service and not a service which in fact could be furnished only by a line haul operation. The motion was supported by an affidavit of United's Treasurer, which states in part:

Since the operating authority of United Motor Freight is limited to the handling of air freight its success depends on its ability to do what it has done, namely, gear its operations to the specific needs of shippers and receivers of air freight. This specialized service is nevertheless line haul service. The cities of Lansing, Jackson, Owosso and Flint could not be adequately, economically or efficiently served in pickup and delivery operations. One hallmark of pickup and delivery of less-than-truckload shipments is their movement from point of receipt by the carrier to point of delivery by that carrier without consolidation with other shipments, i. e. without "terminalling." The distance from Flint to the Detroit airports is too great to permit this to be done economically or efficiently as a matter of routine. Hence, apart from the fact that Flint is in no sense within the bounds of the commercial zone or terminal area of Detroit, air freight shipments to and from Flint are and must be handled as line haul movements.

1. 72 Stat. 758, 49 U.S.C. § 1373.

2. 14 C.F.R. § 222.2.

3. 14 C.F.R. § 222.3(d).

United also brought to the Board's attention that the Interstate Commerce Commission, acting under comparable statutory provisions,[4] had held that service between Detroit airports and Flint was not "incidental to transportation by aircraft" and therefore was not exempt from the Commission's certification requirements.

The Board relied upon Eastern Airlines v. CAB, 185 F.2d 426, 87 U.S.App. D.C. 331, for the proposition that United may not complain of damage from competition made possible by an unauthorized administrative action. I do not think the proposition applies here,[5] for though the Constitution does not guarantee protection against such damage, the agency nevertheless must follow a procedure consistent with its valid regulations reasonably construed. And having disclosed a "substantial interest" in the Board's order, United is entitled to judicial review of that order.[6]

Considering that the nature of the proceedings was adjudicatory, and that the nature of the result was licensing, I would not classify the grant of the application as rulemaking by the Board. Moreover, the responsibility of the Board to further transportation by air, advanced by the Board in brief and argument as support for its order, does not justify refusing a hearing in this case, where the established 25-mile rule-of-thumb terminal area was exceeded so greatly. As the Board states in its order under review:

The ultimate question to be resolved in each individual case under such procedure [Part 222 of Board's Economic Regulations] is whether the service proposed by the air carrier is truly pick-up and delivery in nature, or whether it is, in fact, a line-haul operation.

4  Civil Aeronautics Act of 1938, § 1107(j), 52 Stat. 1029, 49 U.S.C. § 303(b) (7a).

5.  See 1 Davis, Administrative Law, 412, which reads:
    The true principle is that a party who has a sufficient interest or right at stake in a determination of governmental action should be entitled to an opportunity to know and to meet, with the weapons of rebuttal evidence, cross-examination, and argument, unfavorable evidence of adjudicative facts, except in the rare circumstance when some other interest, such as national security, justifies an overriding of the interest in fair hearing.

6.  Federal Aviation Act of 1958, § 1006(a), 72 Stat. 795, 49 U.S.C. § 1486(a).