**WYCOFF COMPANY, Incorporated,**
**Plaintiff,**

v.

**UNITED STATES of America, and Interstate Commerce Commission,**
**Defendants.**

No. C 108–62.

United States District Court
D. Utah,
Central Division.
March 31, 1965.

Harry D. Pugsley, Salt Lake City, Utah, for plaintiff.

John H. D. Wigger, Atty., Dept. of Justice, and William T. Thurman, U. S. Atty. for Dist. of Utah (William H. Orrick, Jr., Asst. Atty. Gen., with them on the briefs), for the United States.

Thomas H. Ploss, Asst. Gen. Counsel, I.C.C. (Robert W. Ginnane, Gen. Counsel, and Leonard S. Goodman, Asst. Gen. Counsel, I.C.C., with him on the briefs), for Interstate Commerce Commission.

Before LEWIS, Circuit Judge, RITTER, Chief District Judge, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

By this action in which a statutory [1] three-judge court has been convened the plaintiff, Wycoff Company, Inc., chal-

---

1. 28 U.S.C. §§ 2284 and 2321–2325. See also 28 U.S.C. §§ 1336, 1338.

lenges the report and order of the Interstate Commerce Commission [2] determining the extent to which plaintiff's motor carrier service to and from the Salt Lake City Airport is exempt from regulation under Section 203(b)(7a) of the Interstate Commerce Act, 49 U.S.C. § 303 (b)(7a)[3] and finding that the public convenience and necessity did not justify related operations by plaintiff beyond such exemption.

Plaintiff began airfreight service to and from the Salt Lake City Airport outside the scope of its existing certification by the Commission as a motor carrier of property in the belief that such operations were exempt from regulation notwithstanding that they involved in instances motor transportation up to several hundred miles. Apparently to set developing questions at rest, in 1958 plaintiff filed with the Commission an application for a certificate of public convenience and necessity authorizing it to transport commodities having a prior or subsequent movement by aircraft between the Salt Lake City Airport and places in Utah and surrounding states already served by plaintiff under its existing authority to transport newspapers, motion picture film and other express-type commodities.[4] In the alternative, or to the extent these operations were not to be authorized by certificate, plaintiff requested the Commission to determine that its motor carrier service was exempt as "incidental to transportation by aircraft" within the meaning of Section 203(b)(7a), supra.

Plaintiff's application was protested by common carriers of property holding certificates for competing operations; a hearing was had, and the Commission examiner, without attempting to delineate the extent of the (7a) exemption, recommended that the Commission grant a certificate for most of the services proposed by plaintiff. On November 22, 1961, the Commission (Division 1), entered its report and order defining the exempt operations in harmony with the limiting [5] guidelines which it theretofore had established in the Kenny case,[6] accepting the examiner's findings of fact, but determining contrary to the conclusions of the examiner that the plaintiff had not established a public need for any of its proposed operations beyond the exempt zone. Plaintiff's petition for reconsideration of this decision was denied, and suit in this court was instituted on June 25, 1962.

In the meantime, a broad rule making proceeding [7] had been instituted by the

2. Wycoff Company, Incorporated, Extension-Airfreight, Docket No. MCC–89684 (Sub.No.23), 89 M.C.C. 369, reaffirmed except for minor changes not here in question by an order of the full Commission dated May 22, 1964.

3. "Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (7a) the transportation of persons or property by motor vehicle when incidental to transportation by aircraft."

4. Authority for certain additional routes also was sought by the applicant and denied by the examiner, but these are not in issue here.

5. The exempt operations were generally confined by the adopted formula, for reasons hereafter discussed, to an area within 25 miles of the airport.

6. Kenny Extension—Air Freight, 61 M. C.C. 587 (1953). In this decision pickup and delivery areas described in tariffs filed by airlines with the Civil Aeronautics Board were accepted by the Commission as establishing *prima facie* exempt zones. Within these zones, motor transportation of air freight was accepted by the Commission as incidental, to transportation by aircraft, permitting airlines, freight forwarders and shippers to use the partially exempt motor carriers although not certificated for these operations. Beyond these zones, airlines and shippers were required to use certificated motor carriers, unless specific applications were approved by the Commission for enlargement of the zone in view of special circumstances.

7. No. MC–C 3437, Motor Transportation of Property Incidental to Transportation by Aircraft.

Commission for the purpose of generally interpreting by regulation the statutory exemption of "transportation incidental to movements by aircraft". On September 21, 1962, the Commission entered an order reopening the proceeding on review here, for future consideration in light of possible developments in the rule making proceeding. After extended hearings in the latter proceeding, rules on the subject were adopted by the Commission on May 4, 1964.[8] These rules generally followed the rationale of the Kenny case, supra, so far as material here. On May 22, 1964, the Commission entered an order modifying its previous order to formally harmonize the two proceedings, but the modification constituted a substantial affirmation. Thus, the modified order dismissed plaintiff's application for a certificate of public convenience and necessity insofar as the proposed operation was exempt in terms of the new regulation rather than merely with reference to the Kenny case, and denied the application for certification of proposed operations beyond the exemption defined in the regulation.

The plaintiff attacks the action of the Commission by three contentions:

1. That the Commission does not have jurisdiction over ground transportation of commodities incidental to movement by aircraft and, hence, does not have authority to determine the limits of this exemption by decision or regulation; or at least that there is irreconcilable conflict between the authority of the Commission and the Civil Aeronautics Board in this area.

2. In the event the Commission had jurisdiction to make the determination in question, it erred in its application of the law by engrafting upon the statutory ex-

emption in effect a mileage limitation, or a zone limitation keyed to the tariff schedules filed by the airlines with the approval of the Civil Aeronautics Board.

3. The Commission's reversal of the examiner's conclusions and its denial of a certificate of public convenience and necessity for the proposed operations beyond the statutory exemption as interpreted, were arbitrary and capricious.

Before discussing these claims it must be decided procedurally whether we should consider certain evidence tendered by plaintiff *dehors* the record made before the Commission. The rule is well settled that proceedings such as this are not *de novo,* and ordinarily it is improper to allow the Commission's findings to be attacked or supported in court by evidence which the Commission had no opportunity of considering.[9] We do not believe that departure from established principles is warranted by the fact of the rule making proceeding or the subsequent entry of the modified order after the filing of plaintiff's original complaint; nor does the limited purpose for which the new evidence was offered [10] justify it. In any event, the proferred evidence was not of a character to throw into question the conclusions reached here.

It is our opinion that the Commission clearly possessed jurisdiction to determine the extent of the statutory exemption provided by Section 203(b) (7a), supra.

The line of demarcation between exempt and unexempt service is equally important for the purposes of the application of permissible regulations to motor carriers and the withholding of impermissible ones by the Commission. The Commission has the broad power

---

8. Motor Transportation of Property Incidental to Transportation by Aircraft, 95 M.C.C. 71. The regulations have been codified as 49 C.F.R. 210.40 and 404, 404.1. The text of the regulations also is set out in 95 M.C.C. 94–95.

9. Louisville & Nashville Railroad Co. v. United States, 282 U.S. 740, 51 S.Ct. 297, 75 L.Ed. 672 (1931); Mississippi Valley

Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934); cf. American Trucking Ass'ns v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L. Ed. 337 (1953).

10. "To assist the court in making a proper interpretation of the true scope of the exemption statute".

"[t]o administer, execute and enforce all provisions * * *" of Part II of the Act dealing with motor carriers, "to make all necessary orders in connection therewith, and to prescribe rules, regulations, and procedures for such administration." [11] The determination of the area of exemption through case by case adjudication or by general rule subject to case by case application, is within the Commission's competence. And there appears no real dissonance, in theory or in practice, between the voices of the Commission and the Federal Aeronautics Board in this area, taking into consideration their respective objectives and functions in view of the national transportation policy. The convincing foundations for these conclusions have been so recently and well stated by another three-judge court, with the views of which we agree, as to make extended discussion here on the point unnecessary.[12] The reliance placed by plaintiff upon the so-called Flying Tiger decision to establish conflicting jurisdiction in the Civil Aeronautics Board is misplaced.[13]

■ Having concluded that the Interstate Commerce Commission had jurisdiction to define the scope of the exemption granted by Section 203(b) (7a), and to regulate plaintiff's operations beyond the exempted operations as so defined, it is necessary to determine whether the regulation and decision constitute an arbitrary, unreasonable or unlawful exercise of the Commission's discretion. We are satisfied that they do not.

In MC–C–3437, the rule making proceeding which furnishes the basis of the Commission's order under attack, it is held (insofar as material here) that "(t)ransportation of property by motor vehicle is transportation incidental to transportation by aircraft within the meaning of section 203(b)(7a) * * * provided (1) that it is confined to the transportation of shipments in bona fide collection, delivery, or transfer service performed within the terminal area of the direct aircarrier * * * providing the line-haul transportation, which * * * if the line-haul air transportation is provided by a carrier subject to economic regulation under the Federal Aviation Act, has been described in a tariff filed with and accepted by the Civil Aeronautics Board, and (2) that it is confined to the transportation of shipments which have been received from or will be delivered * * * as part of a continuous movement which, if provided by an air carrier subject to economic regulation under the Federal Aviation Act, shall be *provided for in tariffs filed with and accepted by the Civil Aeronautics Board,* and shall be performed on a through air bill of lading covering, in addition to the line-haul movement by air, the collection, delivery, or transfer service performed

11. Section 204(a) (6) of the Interstate Commerce Act, 49 U.S.C. § 304(a) (6); American Trucking Ass'ns, v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1963).

12. See Air Dispatch Inc. v. United States and Interstate Commerce Commission, No. 36000, D.C.D.Pa.1964, 237 F.Supp. 450. In this decision Judge Davis concludes for the court: "The determination of the scope of this exemption from economic regulation must logically fall on the Commission. Whether this determination is accomplished on an *ad hoc* basis as in Kenny and the cases following that decision, or by use of the rule making power does not alter the right to make such a determination."

13. City of Philadelphia v. Civil Aeronautics Board, 110 U.S.App.D.C. 104, 289 F. 2d 770 (D.C.Cir. 1961). The decision of the Board as sustained by the Third Circuit went no further than to hold that Flying Tiger's proposed service "would, as to it, constitute air transportation and that in rendering (such) service the airline will be fulfilling its obligation under its certificate". The Board had added that "(I)f the (Interstate Commerce) Commission should conclude under the standards normally applied by it that the truck operation is not exempt, the trucker must have or obtain the requisite I.C.C. authority in order for Flying Tiger Lines to operate in the manner it proposes".

by the motor carrier".[14] (Emphasis added.)

It is to the provision emphasized above, confining the exempted transportation to shipments constituting a part of a continuous movement provided for in tariffs accepted by the Civil Aeronautics Board, that plaintiff particularly objects, since such tariffs ordinarily are not approved by the Board if they involve terminal deliveries beyond 25 miles from an airport. This regulation, plaintiff argues, places a mileage restriction upon the meaning of "incidental", contrary to the intent of the exemption statute. The further objection is raised that if the Commission has power to determine the scope of the exemptions, it may not delegate this to either the air carrier over which it has no jurisdiction or to the C.A.B. And plaintiff contends that the Commission fell into its "error" because of its or the Board's preoccupation with ground services from airports in congested eastern areas bearing no comparison to the situation of western airports spaced "several hundred miles apart".

The discussion in MC–C–3437 Motor Transportation of Property Incidental to Transportation by Aircraft, 95 M.C.C. 71 et seq., supra, outlines the considerations leading to the adoption of the regulations and order under attack.[15] The Commission has recognized that inflexible mileage restrictions should not be imposed but that the relationship of airline tariffs approved by the Board to incidental transportation services furnishes at least a general practical guide, subject to re-evaluation by the Commission under special circumstances.[16] The plaintiff complains because the Commission in evaluating the circumstances of this case did not extend the exempt zone to include a large industrial plant situated slightly beyond 25 miles from the airport and hence not included in approved airline tariffs. We cannot say that even this ex-

14. 49 C.F.R. 210.40. Additional provisions in the regulation for temporary substitution of motor-for-air transportation due to emergency conditions, and others covering airfreight forwarders, are not here pertinent.

15. Among other things it is said: "The Kenny case went on to find that there was no need to define specifically the geographical limits within which exempt transportation might be performed. Instead, it provided that in order to come within section 203(b) (7a), transportation must be performed within the terminal area established by the line-haul air carrier in tariffs filed with the C.A.B. The assumption underlying this approach to the determination of the scope of the exemption was that the C.A.B. would not hestitate to reject a publication which would result in an unreasonably large exempt area. Our re-evaluation of the situation in the light of the representations filed in the instant proceeding convinces us that this aspect of the Kenny decision, too, is correct and that the imposition of a definite mileage limitation is unnecessary. In reaching this conclusion, we have attached considerable significance to the representations of several of the parties specializing in the transportation of air freight. They have taken the position that the present standard has encouraged the development of airfreight service, and that it should be retained. The C.A.B.'s actions since the promulgation of the Kenny criteria, particularly as reflected in the rules, contained in Appendix II hereto, which it has adopted, clearly illustrate that agency's reluctance to sanction any wholesale expansion of air-carrier terminal areas beyond the 25-mile rule of thumb which it has used for many years. * * *" 95 M.C.C. p. 85.

16. "(c) Individual determination of exempt zones.—Upon its own motion or upon petition filed by any interested person, the Interstate Commerce Commission may, in an appropriate proceeding, determine whether the area within which the transportation of property by motor vehicle, in bona fide collection, delivery, or transfer service, must be performed, in order to come within the provisions of paragraph (a) of this section, should be individually determined with respect to any particular airport or city authorized to be served by a direct air carrier or air freight forwarder holding authority from the Civil Aeronautics Board, and whether there should be established therefor appropriate boundaries, differing in extent from the terminal areas of such direct air carriers or freight forwarders as defined in tariffs filed with and accepted by the Civil Aeronautics Board." 95 M.C.C. 95.

clusion was arbitrary or capricious in view of the entire record. But this complaint is a mere incident of plaintiff's argument which involves a frontal attack on any restriction which would preclude its transportation of airfreight under a through air bill of lading from the Salt Lake Airport to any place specified in the bill of lading. We agree with the defendants that to allow a motor carrier by virtue of any claimed exemption from regulation to transport shipments any distance so long as they had prior or subsequent movements by aircraft, could only result in the rapid deterioration of effective motor carrier regulation in interstate commerce.

Movements of freight by motor carriers "incidental to transportation by air" within the contemplation of the statute must mean something different than "motor carrier movements preceding or following air transportation". The required relationship to air transportation must be an *incidental* one. In considering the meaning of the exempting language it appears proper and necessary to consider the nature and circumstances of the air transportation, including the holding out of its extent by the approved tariffs of the airlines. To constitute a movement incidental to air transportation, we believe that such movement must be incidental to some particular air transportation, not merely to the broad system of air traffic as a whole. Being incidental, one of the relevant circumstances would seem to be its context with the regulatory plan to which the

airline in question is subject. This is not the only possible factor, and indeed it is not accepted as much by the Commission's regulation. Yet it is a relevant circumstance historically, practically and conceptionally, the application of which in this case cannot be deemed to be irrational. A similar recognition of the limiting meaning of the term in relation to the actual operations of the airlines will go far toward answering the plaintiff's contention that the regulation must necessarily be tailored specially for areas where airports, and particularly those receiving jet aircraft, are widely spaced, and that the existing ones are arbitrary and unrealistic as applied particularly to the Salt Lake area.[17] Congress by the exception could not have meant to fill the gaps between airports however extended, by a wholesale substitution of unregulated motor carrier service. The exception covers handling of airfreight by motor carrier only to the extent that this reasonably can be deemed incidental to air transportation facilities and services in actual operation.

We conclude that the definition of the exempt zone, as applied to plaintiff's operations,[18] was not inconsistent with the statute, was not unreasonable nor arbitrary, was justified by adequate findings of fact supported by competent evidence, and was in keeping with persuasive historical and, practical considerations. Since the decision under review with respect to the exemption rests upon a rational basis, the informed discretion of the Commission must be upheld.[19]

17. "The Commission's interpretation", says plaintiff "would make 'incidental' a provincialism, wholly unrealistic in light of the vast western area between airports".

18. The Commission found that the proposed operation by applicant as a common carrier by motor vehicle is exempt from certificate requirements to the extent that it is confined to the transportation in bona fide collection, delivery, or transfer service of shipments which have been received from, or will be delivered to, an air carrier as part of a continuous movement under a through air bill of lading covering, in addition to the line-

haul movement by air, the collection, delivery, or transfer service performed by applicant between the Salt Lake City Airport, Utah, on the one hand, and, on the other, points named in the Salt Lake City Airport tariffs of the air carriers performing the air portion of the line-haul transportation of such shipments as filed with the Civil Aeronautics Board.

19. American Trucking Assn. v. United States, supra, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953); Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

■ The record also supports the findings and conclusions of the Commission that plaintiff failed to establish a present or foreseeable future need for that part of the proposed service embracing "nonexempt" movements of air freight between the Salt Lake City Airport and points outside the air carriers' terminal areas on presently authorized routes, despite the recommendations of the examiner to the contrary.[20]

■ The Commission's denial of a certificate was pursuant to statutory authority.[21] Its decision is supported by adequate findings and conclusions based on substantial evidence.[22] One of the basic ingredients in the determination of public convenience and necessity is the adequacy of existing service, and the applicant has the burden of producing evidence to show that the proposed service to the extent to be authorized by the certificate is or will be required by the present or future public convenience and necessity.[23] Adequacy of existing services is a proper subject of consideration in this field.[24] The Commission's conclusions are not vulnerable merely because they overruled those of the examiner. The Commission, not the examiner, exercises the determinative judgment and discretion.[25] In this respect, also, the rational basis of the order is sufficient to require its approval.[26]

The order of the Commission is in all respects affirmed.

20. The Commission found that the examiner's findings to the extent they went were accurate and entitled to adoption as supplemented by the Commission, but that despite the efficient service of the plaintiff as found by the examiner: "Six motor common carriers of general commodities with exceptions, collectively can provide regular-route service throughout the area involved, serving Salt Lake City. As to those points involved not directly within their own operating authorities, service is provided by interlining with other motor carriers. * * * They are willing and able to provide a scheduled pickup and delivery service at the airport conducted on a 24-hour basis, 7 days a week. * * * Although an increase in airfreight traffic is anticipated, the evidence is not convincing that such increase will occur outside the terminal area, from and to which the bulk of this traffic now moves. Applicant's unauthorized operations outside of this terminal area have deprived authorized carriers of traffic they are qualified to transport. * * * Further, there is no evidence that the abundant existing service is inadequate in any material respect to meet supporting witnesses' needs."

21. 49 U.S.C. § 307(a) provides that "a certificate shall be issued to any qualified applicant therefor * * * if it is found * * * that the proposed service * * * is or will be required by present or future public convenience and necessity; otherwise such application shall be denied * * *."

22. Riss & Co., Inc. v. United States, 100 F.Supp. 468 (D.C.W.D.Mo.1951) aff'd. 342 U.S. 937, 72 S.Ct. 559, 96 L.Ed. 697, rehrg. denied 343 U.S. 937, 72 S.Ct. 769, 96 L.Ed. 1344; cf. Public Service Commission of Utah v. United States, 356 U.S. 421, 78 S.Ct. 796, 2 L.Ed.2d 886 (1958); Utah Citizens Rate Association v. United States, 192 F.Supp. 12 (D.C.Utah 1960), aff'd 365 U.S. 649, 81 S.Ct. 834, 5 L.Ed.2d 857.

23. Hudson Transit Lines, Inc. v. United States, 82 F.Supp. 153 (S.D.N.Y.1948); Quickie Transport Company v. United States, 169 F.Supp. 826 (D.C.Minn.1959), aff'd 361 U.S. 36, 80 S.Ct. 140, 4 L.Ed. 2d 111.

24. Hudson Transit Lines Inc. v. United States, 82 F.Supp. 153 (S.D.N.Y.1948) aff'd 338 U.S. 802; Parkhill Truck Co. v. United States, 198 F.Supp. 362 (D.C.Okl. 1961); Filson v. I. C. C., 182 F.Supp. 675 (D.C.Colo.1960); cf. Schaffer Transp. Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957).

25. Robbins v. United States, 204 F.Supp. 78 (E.D.Pa.1962).

26. Mississippi Valley Barge Line Co. v. United States, supra, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934); Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308 (1912); Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946).