**AMERICAN MOVERS CONFERENCE et al., Plaintiffs,**

**and**

**Universal Carloading & Distributing Co., Inc.; Acme Fast Freight, Inc.; and National Carloading Corporation, Intervening Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**and**

**Routed Thru-Pac, Inc., Intervening Defendant.**

**Civil No. 69–325–F.**

United States District Court
C. D. California.

Dec. 15, 1969.

Macleay, Lynch, Bernhard & Gregg,
Russell S. Bernhard, Washington, D. C.,

Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., John L. Endicott, Los Angeles, Cal., for plaintiffs.

Clarence William Vandegrift, Washington, D. C., George L. Catlin, Von Herzen, Catlin & Reinjohn, Los Angeles, Cal., for intervening plaintiffs.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Division, Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for United States of America.

Fritz R. Kahn, Acting Gen. Counsel, Manny H. Smith, Barry Roberts, Attys., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Denning & Wohlstetter, Alan F. Wohlstetter, Washington, D. C., Richard C. Dyer, Los Angeles, Cal., for intervening defendant.

## MEMORANDUM OPINION AND ORDER AFFIRMING THE ORDER OF THE INTERSTATE COMMERCE COMMISSION

Before BARNES, Circuit Judge, WESTOVER and FERGUSON, District Judges.

### PER CURIAM:

This is an action brought under (1) Section 17(9) of the Interstate Commerce Act (49 U.S.C. § 17(9)), (2) 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325, and (3) 5 U.S.C. §§ 702–706, to restrain and set aside a report and order of the Interstate Commerce Commission.

The report and order of the Commission, 332 I.C.C. 352, was decided February 9, 1968, in No. FF–316, Routed Thru-Pac, Inc., Freight Forwarder Application, wherein the Commission found that service by Routed Thru-Pac, Inc. (RTP) as a freight forwarder, in interstate commerce, of used household goods and unaccompanied baggage between points in the United States, including Alaska and Hawaii, would be consistent with the public interest and the national transportation policy.

### Statement of Case

This proceeding commenced by the filing of an application before the Commission on March 3, 1965, by Routed Thru-Pac, Inc., under Section 410(c) of the Interstate Commerce Act, 49 U.S.C. § 1010(c), for a permit authorizing the forwarding, in interstate or foreign commerce, of (1) used household goods, (2) unaccompanied baggage, and (3) used automobiles, between points in the United States, including Alaska and Hawaii. Four of the plaintiffs, Aero Mayflower Transit Co., Inc., Allied Van Lines, Inc., North American Van Lines, Inc., and United Van Lines, Inc., protested the application and were parties to the proceedings before the Commission from its inception. Likewise, the intervening plaintiffs herein protested the application and were parties throughout the proceedings.

A hearing was held before an examiner of the Commission. Based upon his interpretation of the exemption from regulation contained in Section 402(b) (2) of the Act, 49 U.S.C. § 1002(b) (2), the examiner recommended that the application be denied. Subsequently, several freight forwarders operating under the Section 402(b) (2) exemption were allowed to intervene so as to be able to file exceptions limited to the issue of the proper construction of Section 402(b) (2). In addition, exceptions were filed by RTP; United; Mayflower and North American (jointly); Acme, National, and Universal (jointly); and Allied. Also, a reply to exceptions was filed by RTP.

Thereafter, the Commission issued its report and order. The Commission concluded that RTP's service as a freight forwarder of used household goods and unaccompanied baggage required authority from the Commission, and that the record supported a finding that a grant of such authority would be consistent with the public interest and the national transportation policy. Accord-

ingly, the Commission ordered the granting of an appropriate permit under Section 410. One commissioner concurred in the result, one commissioner concurred in part, and one dissented in part.

By order of May 8, 1968, the Commission permitted intervention by the Movers' & Warehousemen's Association of America, Inc., the Household Goods Carriers' Bureau, and the American Movers Conference. Petitions for reconsideration were filed by United, Mayflower, Allied, North American Van Lines, Inc., American Movers Conference and Household Goods Carriers' Bureau. By order of October 24, 1968, the Commission denied the petitions—

" * * * for the reason that the findings of the Commission are in accordance with the evidence and the applicable law, and that no sufficient or proper cause appears for reopening the proceeding for reconsideration or for oral argument."

Thereafter, on January 31, 1969, the Commission granted a permit to RTP to operate, in interstate commerce, as a freight forwarder of used household goods and unaccompanied baggage between points in the United States, including Alaska and Hawaii, subject, however, to such terms, conditions, and limitations as were then, or might thereafter be, attached to the exercise of such authority by the Commission.

### Statutes Involved

The primary statutes involved in this proceeding are:

1. Section 402(a) (5) of the Interstate Commerce Act, 49 U.S.C. § 1002 (a) (5):

"The term 'freight forwarder' means any person which (otherwise than as a carrier subject to chapters 1, 8, or 12 of this title) [Parts I, II or III of the Act] holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of breakbulk and distributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to chapters 1, 8, or 12 of this title [Parts I, II or III of the Act]."

2. Section 402(b) (2) of the Interstate Commerce Act, 49 U.S.C. § 1002 (b) (2):

"The provisions of this chapter [Part IV of the Act] shall not apply * * * (2) where the property with respect to which service is performed consists of ordinary livestock, fish (including shellfish), agricultural commodities (not including manufactured products thereof), or used household goods, if the person performing such service engages in service subject to this chapter [part] with respect to not more than one of the classifications of property above specified."

3. Section 410(a) of the Interstate Commerce Act, 49 U.S.C. § 1010(a):

"No person shall engage in service subject to this chapter [Part IV of the Act] unless such person holds a permit, issued by the Commission, authorizing such service; except that (1) any person engaged in service subject to this chapter [part] when this section takes effect may continue to engage in such service for a period of one hundred and eighty days thereafter without a permit, and (2) if application for a permit is made to the Commission by such person within such period, such person may, under such regulations as the Commission shall prescribe, continue to engage in such service subject to this chapter

[part] until otherwise ordered by the Commission."

4. Section 410(c) of the Interstate Commerce Act, 49 U.S.C. § 1010(c):

"The Commission shall issue a permit to any qualified applicant therefor, authorizing the whole or any part of the service covered by the application, if the Commission finds that the applicant is ready, able, and willing properly to perform the service proposed, and that the proposed service, to the extent authorized by the permit, is or will be consistent with the public interest and the national transportation policy declared in this Act; otherwise such application shall be denied. No such permit shall be issued to any common carrier subject to chapters 1, 8, or 12 of this title [Parts I, II or III of the Act]; but no application made under this section by a corporation controlled by, or under common control with, a common carrier subject to chapters 1, 8, or 12 of this title [Parts I, II or III of the Act], shall be denied because of the relationship between such corporation and such common carrier."

### Issues Presented

Plaintiffs have filed a two-count complaint. In the first count they contend that the Commission, in its *Routed Thru-Pac* report and order issued under Part IV of the Act, by implication interpreted the operating authorities of household goods carriers issued under Part II of the Act so as to preclude their long-established right to transport unaccompanied baggage of military personnel. In the second count they challenge the Commission's holding that baggage which moves independently and in an entirely separate movement from other used household goods does not fall within the Section 402(b) (2) exemption.

### Count I

In its report and order the Commission, interpreting the "used household goods" exemption in Section 402(b) (2),

held only that under Part IV of the Act pertaining to freight forwarders (not motor carriers, subject to Part II of the Act), specific authority was necessary for a formerly exempt freight forwarder such as RTP to handle unaccompanied baggage.

The plaintiffs contend, however, that the effect of the order is to deprive motor carriers of household goods of the right to transport unaccompanied baggage under their certificates.

The concern of the motor carriers of household goods is misplaced. Any fair reading of the Commission's report and order requires the conclusion that it is concerned only with Part IV of the Act pertaining to freight forwarders.

At oral argument, in a further attempt to calm the fears of motor carriers of household goods, counsel for the Commission stipulated that the *Routed Thru-Pac* report and order does not pertain to them and would have no effect under their certificates.

■ With that stipulation, and this court's interpretation of the report and order of the Commission, the plaintiffs have received for practical purposes what they came to court for and it would be redundant to say anything else. Clearly, the plaintiff motor carriers of household goods possess authority to transport unaccompanied baggage of military personnel and nothing in the Commission's report and order in this case can be implied to the contrary.

### Count II

The charge in the second count by plaintiffs and intervening plaintiffs is that the Commission erred in its conclusion that under Part IV baggage which does not move as a part of a shipment of other used household goods, which is not tendered at approximately the same time, and which is not handled under the same contract does not fall within the Section 402(b) (2) exemption of "used household goods".

■ Neither plaintiffs nor the intervening plaintiffs have standing to chal-

lenge the Commission's decision for the reason that they have not suffered a legal wrong because of the decision of the Commission, nor have they been adversely affected or aggrieved by the Commission's action. Pennsylvania R. R. Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292 (1964), cert. denied, American-Hawaiian S. S. Co. v. Dillon, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964).

The right of judicial review of administrative action is governed by 5 U.S.C. § 702, which provides as follows:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

Clearly the Commission's decision that specific authority is required for a freight forwarder to handle unaccompanied baggage moving independently in no manner affects motor carriers of household goods. As to the intervening plaintiffs, who are regulated freight forwarders, the decision has no effect upon them because their permits authorize them to forward commodities generally, including baggage moving independently.

In this regard, the household goods carriers do not take issue with the Commission's finding that based on the record a need existed for RTP's proposed type of service. The regulated freight forwarders do not claim that there was insufficient evidence in the record for the Commission to grant a permit to RTP covering the forwarding of used household goods and unaccompanied baggage.

The only claim that could possibly give rise to any standing is the allegation by the freight forwarders that the decision would result in competitive injury to the household goods carriers, and not themselves.

An increase in competition is not a reason for denying the Commis-

sion's authority to issue a certificate. A. B. & C. Motor Transp. Co., Inc. v. United States, 69 F.Supp. 166 (D.C. Mass.1946). Pennsylvania R. R. Co. v. Dillon, *supra.*

In any event, regardless of the lack of standing of the plaintiffs and intervening plaintiffs, the Commission's holding that baggage which moves independently and in an entirely separate movement from other used household goods does not fall within the exemption set forth in Section 402(b) (2) is a proper and reasonable interpretation of the Interstate Commerce Act.

The Commission found that unaccompanied baggage is not an exempt commodity under the used household goods exemption of Section 402(b) (2), and therefore the operations of RTP are subject to its jurisdiction.

In enacting the used household goods exemption of Section 402(b) (2), Congress left the Commission with the responsibility for delineating the scope of the exemption. This is clear from the legislative history of the exemption and the absence of a definition of the term "used household goods" in Part IV of the Act. In discussing the effect of the proposed bill to regulate freight forwarders on the floor of the House of Representatives, Congressman Wolverton, the ranking minority member of the House committee, stated:

"Since the purpose and object of the regulation is not particularly concerned with the practices of such operators, paragraph (b) (2) of section 402 proposes to exempt them by making the bill inapplicable where the property consists of 'a single general commodity or used household goods.' Whether or not a particular operation is in fact limited to handling 'a single commodity' so as to come within the scope of this exemption would be for the Interstate Commerce Commission to determine when application for exemption under this provision is filed." (Cong.Rec.House, October 23, 1941, p. 8216.)

It was clearly within the competence of the Commission to determine the scope of the used household goods exemption of Section 402(b) (2) as it did in the *Routed Thru-Pac* proceeding. *Cf.* Wycoff Company v. United States, 240 F.Supp. 304 (D.C.Utah 1965).

Accordingly, the issue before this court is whether or not the conclusion of the Commission that the forwarding of unaccompanied baggage is subject to its jurisdiction has a rational basis. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). The court is not concerned with the correctness of the Commission's reasoning, but only with whether there is warrant in the law and facts for the Commission's decision. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Virginian Ry. Co. v. United States, 272 U.S. 658, 665–666, 47 S.Ct. 222, 71 L. Ed. 463 (1926).

A review and study of the record requires a judicial finding that the Commission correctly concluded that where a freight forwarder handles any commodity other than the strictly defined commodity of used household goods, that is, when it handles used automobiles or unaccompanied baggage, its operation is subject to the jurisdiction of the Commission. The Commission's interpretation of the used household goods exemption of Part IV of the Act is consistent with the practice in the freight forwarder industry which considers unaccompanied baggage to be a separate and distinct commodity from used household goods and is within the congressional intent to exempt only used household goods under the exemption. This determination is one within the expertise of the Commission, and is amply supported by the record.

It is, therefore, ordered that the report and order of the Commission is affirmed.