**MANDELL, SPECTOR, RUDOLPH CO.,**
Petitioner,

v.

**UNITED STATES of America,**
Respondent.

No. 15451.

United States Court of Appeals
Third Circuit.

Argued March 24, 1966.

Decided Aug. 24, 1966.

Rehearing Denied Sept. 23, 1966.

Harold E. Kohn, Philadelphia, Pa. (David H. Marion, Philadelphia, Pa., and Dilworth, Paxson, Kalish, Kohn & Dilks and Ned Stein, Philadelphia, Pa., of counsel, on the brief), for petitioner.

Martin Jacobs, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Department of Justice, Washington, D. C., on the brief), for respondent.

Before McLAUGHLIN, HASTIE and GANEY, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This is an appeal under the Judicial Review Act of 1950,[1] seeking a review of an order issued by the Judicial Officer of the Department of Agriculture, pursuant to authority delegated to him by the Secretary of Agriculture. The order was issued pursuant to the Perishable Agricultural Commodities Act, wherein the petitioner was suspended for 90 days from operating in interstate commerce as a commission merchant, dealer and broker in fresh fruits and vegetables. The execution of this order has been stayed by

1. 64 Stat. 1127, as amended, 5 U.S.C. § 1031 et seq.

the Judicial Officer pending the outcome of this appeal.

The Perishable Agricultural Commodities Act requires of all persons transacting business in fresh fruits and vegetables in interstate and foreign commerce as commission merchants, brokers or dealers, to be licensed under the Act. 7 U.S.C. § 499c. The Act makes it unlawful for persons to engage in "unfair conduct" as defined in 7 U.S.C. § 499b. The relevant subsection (4) makes it unlawful—

> For any commission merchant, dealer, or broker * * * to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; * * *.

The statute provides for the filing of a complaint with the Secretary of Agriculture of anyone complaining of a violation and whenever the Secretary deems it warranted, a copy of the complaint made will be forwarded by the Secretary to the commission merchant, dealer or broker, who will be called upon to answer. 7 U.S.C. § 499f(a). Additionally, 7 U.S.C. § 499f(b) provides as follows:

> Any officer or agency of any State or Territory having jurisdiction over commission merchants, dealers, or brokers in such State or Territory and any employee of the United States Department of Agriculture or any interested person may file, in accordance with rules and regulations of the Secretary,[2] a complaint of any violation of any provision of this chapter by any commission merchant, dealer, or broker and may request an investigation of such complaint by the Secretary.

If, in the opinion of the Secretary, the facts so warrant, he may have the complaint served on the person concerned and afford him an opportunity for a hearing before a hearing examiner and, in accordance with the provisions of 7 U.S.C. § 499b, if the violation is proven, he may suspend the license of the offender for a period not to exceed 90 days.

In addition, licensed brokers are required to assign a lot number to each load of the products received and to be sold for the account of another and enter the assigned lot number on the receiving record in connection with the respective loads and on sales tickets identifying sales from such lots and such lot numbers shall be placed on the sales tickets at the time of the sale. Additionally, these records and documents must be kept in file for a period of 2 years.

In early 1961, Hicks Produce, Inc., filed with the Department of Agriculture a complaint concerning 57 shipments of tomatoes consigned to the petitioner for its account. These shipments comprised 98,692 cartons of tomatoes. Upon investigation by the Department, the books of the petitioner were examined for the period through May, 1961, during which the above shipments had been handled by the petitioner. The investigators were unable to secure the accounts receivable records for this period for the reason, as averred in the petition for review, certain business records were unavailable since it was alleged they had disappeared in an accident which had occurred in a storage place of petitioner's business. However, the investigators compared invoices reflecting the sale of Hicks' tomatoes with prices actually paid by the buyers and a comparison of the prices actually paid revealed a number of discrepancies and, as a result of their examination, the investigators were able to identify sales of 83,313 containers and they reconstructed an account sales which showed net proceeds of $106,221.77 in connection therewith. Comparison of the figures reported by the petitioner to Hicks showed net proceeds of $104,-

---

2. 7 U.S.C. § 499o gives the Secretary authority to make such rules and regulations as may be necessary to carry out the provisions of the Act. 7 C.F.R. 47.27(b) provides that "Disciplinary proceedings may be instituted only upon moving papers filed by the Deputy Administrator acting either as a result of the informal-complaint procedure hereinbefore provided *or on his own motion.*" (Italics ours.)

545.57; there thus was an underpayment by the petitioner to Hicks of $1,676.20.

Accordingly, on April 17, 1962, after the investigation of Hicks was completed, representatives of the Department of Agriculture met with the officers of the petitioner and their attorney and went over their findings. While there was a denial of any underpayment or discrepancies by the petitioner, in order to close the matter out the petitioner tendered a check for $1,676.20, payable to Hicks.

On the next day, April 18, 1962, the chief investigator for the Department of Agriculture, Koenigsburg, informed the officers of the petitioner that, in conformity with the Department's procedure, its records would be spot-checked to determine whether the Hicks case was an "isolated case" or whether it was a regular practice. The record discloses that at that time an informal disciplinary complaint was served by Investigator Koenigsburg upon the respondent, but, on motion of the petitioner, when listed for argument in this court, any reference to this informal complaint was stricken by the court since the complaint itself was not introduced in evidence and made a part of the record in the case.

█ The main thrust of the petitioner's contention is that prior to the commencement of this second of the two investigations on April 18, 1962, one day after the completion of the Hicks investigation, which uncovered wrongdoing, there had not been filed by the Secretary of Agriculture "a complaint by a person aggrieved by an alleged violation of the Act."

However, at that time no objection was raised by the petitioner to the investigators' perusal of the company's books, but, in fact, it advised them that it would cooperate fully and would furnish all books, records and accounts to be available to the investigators who began the investigation the following day. As adverted to above, and at the petitioner's suggestion, it placed at the disposal of the investigators all of the books, records, etc., that were available. It can thus be readily seen that the petitioner had adequate notice of the investigation and was willing that it proceed and by their conduct in placing the books and records that were available at the investigators' disposal, waived any technicality of being served with an informal complaint. Furthermore, it can be seen that this investigation, one day later, stemmed from the Hicks investigation which was begun after a complaint, so there was continuity of the investigation to determine additional wrongdoing, prompted by the discovery of the wrongdoing discovered in the Hicks investigation. There would be manifest unfairness to the Department of Agriculture if this objection, raised long after the administrative process was over, and occasioned by the Government's failure to make the informal complaint part of the record, caused us to hold that the requirement of such an "informal disciplinary complaint" was requisite, and could not be waived by respondent's consent. In the face of the petitioner's agreement to the investigation, the aid and assistance rendered by it, it was tantamount to a waiver of the requirement of the statute, as we shall in more detail point out.

The investigators selected, at random for detailed investigation, 35 shipments received by the petitioner during the period October 4, 1960, through April 12, 1962, and they discovered that the petitioner (1) did not maintain proper receiving records at the store or depot; (2) while sales at the store were not identified by lot numbers in all cases, in many cases shipper's initials or other identifying marks had been used, which method, while unsatisfactory in a number of cases, was the only available method; (3) while the sales made at the depot were identified by the number of the railroad car in which the produce was received, when a portion of the shipment was transferred to the store for sale, a ticket was issued showing a sale to the store at a price which was normally lower than other sales made at the depot; and (4) the petitioner's accounts receivable records for the period January 1,

to July 1, 1961, were missing and they alleged they had been lost or inadvertently destroyed.

Based on the petitioner's records, the investigators compared account sales for these shipments with the account sales petitioner had actually rendered to the shippers and in each of the 35 instances, the comparisons disclosed discrepancies ranging from an underpayment of $840.26 to an overpayment of $159.62, which is substantially supported in the record.

On May 23, 1962, after completion of the investigation, the investigators again met with Messrs. Mandell, Spector and Rudolph, and Ned Stein, their attorney, and advised them of the results of their investigation.

Later, on July 26, 1962, the Department wrote to the petitioner a 78 page letter setting out in a most detailed accounting each one of the 35 cases investigated and noted the underpayments and discrepancies therein. While it is a fact that the sales from the shipments received had to be reconstructed both at the petitioner's store location, as well as those at the depot location (two service centers maintained by the petitioner), by matching sales tickets and shipments name or initials; and, further, that fewer sales of a commodity from a shipment could be found than were actually contained in that shipment, in which instances the investigators were compelled to compute an average price of a commodity from the identifiable sales of a particular shipment, nevertheless, all of this was the best and only method available by reason of mislaid or lost records and the failure to assign lot numbers to shipments by the petitioner.

Some six months later, on November 27, 1962, the Department again wrote to the petitioner explaining that an examination of the records of the Hicks case revealed that it did not maintain proper receiving records, that it did not assign and use lot numbers and that it was unable to locate and produce the accounts receivable ledgers. It also re-minded petitioner of the fact that it had tendered to Hicks a check in the amount of $1,676.20 in restitution of its underpayment; that concerning the additional investigation made as a result of what was uncovered in the Hicks case, 35 additional shipments were investigated covering a period from October, 1960, to April, 1962, which revealed that it had under-reported and under-paid the net proceeds of 28 shipments and had over-reported and over-paid in 7 shipments. It can thus be seen that, here again, the Government reiterated to the petitioner the discrepancies that it had previously found. The letter further advised petitioner that it was to make restitution of the underpayments, but it had declined to so do and that violations such as had been found were of sufficient grounds to institute disciplinary action which could result in the revocation or suspension of its license and, finally, the letter was addressed to it, as stated, in compliance with § 9(b) of the Administrative Procedure Act, 5 U.S.C. § 1008(b), and they were now affording petitioner an opportunity to furnish any explanation or comments pertaining to the transactions therein listed and stating that its reply should reach the office of the Department not later than December 19, 1962.

Ned Stein, attorney for the petitioner, replied to this letter on December 17, 1962, and he specifically denied the underpayments, as well as the overpayments, and admitted therein that a request had been made for payment of these underpayments, but his client felt that there was no liability therefor and that, "Under the circumstances, my client is desirous of defending any disciplinary action which your department may care to institute."

The record discloses that at the hearing before Examiner Curry on March 24, 1964, Eugene N. Carlucci, an investigator, testified with respect to 25 of the underpayments discovered, as follows:

We advised them [petitioner] of the discrepancies in the last 25 accountings. And Mr. Stein [counsel for the

petitioner] stated that he could not dispute our figures, as we had thoroughly examined the records, and the figures were obtained from his client's records. We asked the officers of the firm if they thought differently, and they replied that they did not. Mr. Mandell said that there must be some explanation because they actually did not underpay anyone even though the records indicated they did.

Mr. Stein also said at this time he wanted to discuss this matter with Mr. Gardner and Mr. Dimond before recommending the payment of the underpayments found.

Q. At that time they could not come forward with any explanation as to the discrepancies that you found?

A. No, sir.

Q. At that time did they attempt to indicate to you how they arrived at the manner in which they put together the figures from which they made up their respondent's account sales?

A. No, sir.

On March 20, 1963, the acting director of the Fruit and Vegetable Division filed with the Secretary of Agriculture a formal complaint charging petitioner with (1) having failed to account and make payment for the net proceeds realized from sales concerned; (2) having failed to maintain and preserve such accounts and state fully and correctly all transactions involved in its business; and (3) having repeatedly and flagrantly violated 7 U.S.C. § 499b by its failure to account and make payment truly and correctly. Petitioner's license automatically terminated on October 21, 1963, because of their failure to pay the annual licensing fee which was apparently an oversight on its part, rather than a desire on its part to permit the license to terminate. In December, 1963, the Director of the Fruit and Vegetable Division filed with the Secretary notice to show cause why a license should not be denied to the petitioner, the grounds therein asserted being substantially identical to those previously made in the complaint.

The two proceedings were consolidated and a hearing conducted in Philadelphia before a hearing examiner. In December, 1964, the hearing examiner recommended that any license held by the petitioner under the Act be revoked and its application for a new license denied, to which exceptions were duly filed by the petitioner.

Following oral argument, on May 14, 1964, the Judicial Officer entered his order containing extensive findings of fact and conclusions of law with respect to the Hicks transaction and with respect to the erroneous accounting concerning the 35 other lots which the investigators had examined. He also found that, by letter dated November 27, 1962, sent in accordance with § 9(b) of the Administrative Procedure Act, 5 U.S.C. § 1008 (b), petitioner had been afforded the opportunity to achieve compliance with the Act, but failed to so do. He also found that the averaging of sales was not arbitrary and had basis in fact and logic to support it and could not be characterized as unreasonable and was necessary to arrive at the approximate amount actually owing to the consignors and joint account partners. He considered the violations "the most serious and flagrant type possible under the act" since they involved "breaches of fiduciary duty by an agent to his principal and by a joint account partner to his joint venturer" and, finally, ordered the suspension for ninety days of any license held by the petitioner and that a new license should not be issued until the expiration of that period.

In American Export & Isbrandtsen Lines v. Federal Maritime Commission, 9 Cir., 334 F.2d 185, where a letter, in an instance similar to the factual situation here under review, was held not to be a formal complaint, nevertheless the court held that from a review of the record they were satisfied that no substantial right of due process was denied to the petitioner and no prejudice was suffered by it by its failure to comply with Rule 5(b) and 8(c) concerning formal complaints under the Federal Maritime Commission

Rules of Practice and Procedure, 46 C.F.R. c.iv § 502.67.

It is submitted that § 9(b) of the Administrative Procedure Act, 5 U.S.C. § 1008(b),[3] was fully complied with here by reason of the fact that the petitioner was notified by letter of the violations and given an opportunity to redress its misconduct, but it failed to so do.

 It is submitted the Secretary of of Agriculture sustained the burden of proving violations of the Perishable Agricultural Commodities Act for purpose of imposing a punitive license suspension and that his order of license suspension should be affirmed.

3. This section, in pertinent part, provides: "Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, no withdrawal, suspension, revocation, or annulment of any license shall be lawful unless, prior to the institution of agency proceedings therefor, facts or conduct which may warrant such action shall have been called to the attention of the licensee by the agency in writing and the licensee shall have been accorded opportunity to demonstrate or achieve compliance with all lawful requirements."